BAKER *et al. v.* PENECOST *et al.*

(*Jackson,* April Term, 1937.)

Opinion filed June 10, 1937.

TAYLOR, ADAMS & FREEMAN, of Trenton, for plaintiffs in error.

CURRY SIMPSON, of Trenton, for defendants in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is an appeal in error from a judgment of the trial court dismissing a petition for *certiorari* and *supersedeas*, filed by Mrs. H. J. Baker and Mrs. Mary F. Cason. The petition alleged that Mrs. Cason was justly indebted to Mrs. Baker for $400 borrowed money, and as evidence of said indebtedness Mrs. Cason executed her promissory note for that sum and also as security for said note executed a chattel mortgage on a Ford automobile particularly described. That this chattel mortgage was duly recorded on January 20, 1936, in the register's office of Gibson county.

The petition further alleged that O'Neal Commission Company recovered a judgment against Mrs. Cason for $163.79 before a justice of the peace in Gibson county on

January 27, 1936, and execution issued on this judgment and was placed in the hands of defendant Penecost, a Gibson county constable. That notwithstanding O'Neal Commission Company and Penecost both had actual and constructive knowledge of the chattel mortgage upon said automobile to secure the debt to Mrs. Baker, Penecost levied on said automobile as the property of Mrs. Cason.

The petition prayed that the writs of *certiorari* and *supersedeas* issue, that the levy of the execution be quashed, and that petitioners have judgment for costs and damages.

The motion to dismiss the petition for *certiorari* and *supersedeas* was based upon several grounds. The judgment, in general terms, dismissed the petition without indication as to which of said grounds it was rested upon. We think the trial judge was right and that only one challenge of the motion to dismiss need be noticed.

Plaintiffs in error undertake to sustain the petition upon the theory that it is a petition for the writ of *certiorari* in lieu of the writ of *audita querela*. Section 8990 of the Code provides:

"*Certiorari* lies: (1) On suggestion of diminution; (2) where no appeal is given; (3) as a substitute for appeal; (4) instead of *audita querela;* (5) instead of writ of error."

The "writ of *audita querela*" is thus defined in 3 Blackstone, 305:

"An *audita querela* is where a defendant against whom a judgment is recovered, and who is therefore in danger of execution, or perhaps actually in execution, may be relieved upon good matter in discharge which has happened since the judgment; as if the plaintiff has given

him a general release, or if the defendant has paid the debt to the plaintiff without entering satisfaction on the record.''

It is further rather well settled by the common-law authorities that ''the person suing out the writ must be one injured in the former proceeding and a defendant therein.'' 6 C. J., 856.

The writ of *certiorari* has been employed in lieu of *audita querela* in a number of reported decisions in this state upon which the plaintiffs in error rely. *Linebaugh* v. *Rinker*, 7 Tenn. (Peck), 362; *Jones* v. *Williams*, 32 Tenn. (2 Swan), 105; *Denny* v. *White*, 42 Tenn. (2 Cold.), 283, 88 Am. Dec., 596; *Ezell* v. *Holloway*, 61 Tenn. (2 Baxt.), 15; *McGrew* v. *Reasons*, 71 Tenn. (3 Lea), 485; *Thompson* v. *McMillan*, 89 Tenn., 110, 14 S. W., 439. In all these cases the writ of *certiorari* was awarded to a defendant in the original proceedings.

In the very terms by which *audita querela* is defined, Mrs. Baker is excluded from the right to demand that writ in this case, since she was no party to the proceedings in which the judgment against Mrs. Cason was rendered. The writ of *audita querela* itself not being available to her, it follows that she is not entitled to *certiorari* in lieu of *audita querela*.

Likewise, we think the terms by which the use of *audita querela* is defined exclude Mrs. Cason from invoking that writ in this case.

The object of the petition for *certiorari* was to quash the execution, not to review the judgment against Mrs. Cason. It is not obvious that she can be injured by the levy made herein. O'Neal Commission Company and Penecost proceeded on the idea that the conveyance by Mrs. Cason to Mrs. Baker was fraudulent and passed no

title to the latter. If this be true, Mrs. Cason cannot complain of the levy, judgment having been rendered against her and the property being subject to execution. If the conveyance was *bona fide* and Mrs. Cason had only an equity in the property, the levy of execution upon a judgment at law would not have reached her equity.

But aside from this, the real matter in controversy between the interested parties hereto was whether the conveyance of the automobile was in good faith. That is not a matter that has arisen since the judgment, and therefore not a proper matter to be litigated upon *audita querela* or *certiorari* in the nature of *audita querela.*

The plaintiffs in error endeavor to assimilate this case to those in which *certiorari* in lieu of *audita querela* has been employed to quash an execution levied upon exempt property. *Jones* v. *Williams*, 32 Tenn. (2 Swan), 105; *Denny* v. *White*, 42 Tenn. (2 Cold.), 283, 88 Am. Dec., 596.

These decisions, however, are not in point. They proceeded, as they show, on the proposition that the law forbade the seizure of exempt property under execution. In the case before us, the law expressly authorizes a judgment creditor of a fraudulent grantor to seize upon property fraudulently conveyed by such grantor and in disregard of the conveyance.

Code, section 7279: "Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser, (a) have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

(b) disregard the conveyance and attach or levy execution upon the property conveyed.''

Code, section 7280: ''Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured, he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may (a) restrain the defendant from disposing of his property, (b) appoint a receiver to take charge of the property, (c) set aside the conveyance or annul the obligation, or (d) make any order which the circumstances of the case may require.''

These sections of the Code repeat sections 9 and 10 of chapter 125 of the Public Acts of 1919—the Uniform Fraudulent Conveyance Act.

Under section 7279 a creditor whose claim is matured may go into equity to have a fraudulent conveyance set aside or ''may reject the aid of equity, and levy attachment or execution at law . . . as he might before the statute.'' *American Surety Co.* v. *Conner*, 251 N. Y., 1, 166 N. E., 783, 785, 65 A. L. R., 244; *Morse* v. *Roach*, 229 Mich., 538, 201 N. W., 471.

The statute in this particular seems to have made no change in the common law and the law prevailing in most jurisdictions.

''Courts of law have jurisdiction to give relief to creditors against a fraudulent conveyance by the debtor of his property. The remedies administered in a court of law are usually based upon the theory that the conveyance assailed is void or voidable as to creditors, and that a creditor may by legal proceedings seize the property conveyed or its equivalent in the hands of the fraudulent grantee, and, on the assertion of a claim to the

property by the grantee, either in the proceeding in which the seizure is made, or in some other proceeding, show the fraudulent character of the conveyance.'' 27 C. J., 702.

''In accordance with the rule above stated, a judgment creditor may in most jurisdictions subject to the general provisions of the statutes with reference to executions, levy an execution upon the property constituting the subject of the fraudulent conveyance by his debtor, as though the conveyance did not exist, no suit in equity for the purpose of uncovering property being necessary; and this is true, not only of transfers directly from the debtor, but also of transfers whereby his title and ownership are passed to another with a fraudulent intent through the agency of a judicial sale.'' 27 C. J., 704.

The practice stated in the text seems to have been approved in Tennessee, as to real estate fraudulently conveyed, although it has not been commonly adopted. *Russell* v. *Stinson*, 4 Tenn. (3 Hayw.), 1; *Smitheal* v. *Gray*, 20 Tenn. (1 Humph.), 491, 34 Am. Dec., 664; *Cryer* v. *Mayfield*, 5 Tenn. Civ. App. (Higgins), 537.

Ordinarily in this state, judgment creditors have preferred to invoke the aid of equity rather than risk the consequences of a wrongful levy under process from a court at law.

The judgment entered in this case by the circuit judge was proper. *Roddy* v. *Bacon*, 43 Tenn. (3 Cold.), 253.

Affirmed.