In re **AIRPORT–81 NURSING CARE, INC., Debtor.**

**DAVID LEONARD ASSOCIATES, P.C., Plaintiff,**

v.

**AIRPORT–81 NURSING CARE, INC.; First National Bank of Sullivan County and John H. McConnell, Trustee; Vulcan Materials; Loyce Franklin and wife, Patsy Franklin, and Cline Franklin, Substitute Trustee; Robert B. Carter, Trustee In Bankruptcy, Defendants,**

v.

**DAVID LEONARD ASSOCIATES, P.C., Counterdefendant.**

**Bankruptcy No. 3–82–00690.
Adv. No. 3–82–0909.**

United States Bankruptcy Court, E.D. Tennessee.

Sept. 16, 1983.

Jackson C. Raulston, Kingsport, Tenn., for plaintiff.

Robert B. Carter, pro se.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The question before the court is whether the plaintiff architectural firm is entitled to a lien by virtue of its notice of lien lis pendens, Tenn.Code Ann. § 20–3–101 (1980).[1] The trustee in bankruptcy contends that plaintiff's claim is beyond the scope of those claims entitled to lien status under Tenn.Code Ann. § 20–3–101 (1980). Alternatively to its principal argument of a lien right pursuant to Tenn.Code Ann. § 20–3–101 (1980), plaintiff requests the court to retroactively apply Tenn.Code Ann. § 66–11–102(c) (Supp.1982), which provides a lien for the services of a licensed architect in qualified circumstances.

### I

On April 30, 1981, plaintiff David Leonard Associates, P.C., and the debtor entered into an agreement (Ex. 1) for plaintiff's architectural services in connection with debtor's proposed construction of a nursing home facility. Their agreement provided that plaintiff would be paid $86,200.00 for basic services; payments were to be made in correlation to completion of phases of the project. Plaintiff performed its obligations in connection with both the design and the construction documents phases. However, the projected nursing home facility was never constructed. On February 17, 1982, plaintiff filed a complaint against the debtor, in the Sullivan County Chancery Court, to recover judgment in the amount of $64,-650.00[2] allegedly due under the terms of its

---

1. This question was not reached in a previous memorandum pertaining in part to the invalidity of certain certificates of acknowledgment in two separate deeds of trust against the tract on which plaintiff asserts a lien. See *In re Air-* *port-81 Nursing Care, Inc.,* 29 B.R. 501 (Bankr. E.D.Tenn.1983).

2. This figure represents 75% of the compensation of $86,200.00 agreed upon in the contract between plaintiff and the debtor. The contract provides for payment to the architect of 75% of

contract with the debtor. In conjunction with its complaint, plaintiff also filed a notice of lien lis pendens in the office of the Register of Deeds of Sullivan County. This notice includes a description of a six-acre portion of the debtor's 6.52-acre tract in Sullivan County where the proposed nursing home was to have been constructed.

Plaintiff filed an involuntary chapter 7 petition, 11 U.S.C.A. § 303 (1979), against the debtor on May 17, 1982. Debtor controverted the allegations of the involuntary petition. After trial, this court sustained the involuntary petition and entered an order for relief on July 12, 1982.

On October 4, 1982, plaintiff commenced the instant adversary proceeding, involving a variety of competing interests, by requesting the court to declare it is entitled to a first lien against the debtor's six-acre tract particularly described in its notice of lien lis pendens. With the exception of plaintiff and the trustee in bankruptcy, the interests of all the parties to this proceeding in the six-acre tract have heretofore been determined.[3]

Based on the testimony of David Leonard at the hearing on January 31, 1983, the plaintiff is entitled to a claim in the amount of $64,650.00 against the debtor.[4] However, it is the conclusion of the court that plaintiff's claim is not secured by a lien.

## II

Tenn.Code Ann. § 20–3–101 (1980) enacts:

*Filing of abstract—Effect of not filing.—*

(a) When any person, in any court of record, by declaration, petition, bill or cross bill, shall seek to fix a lien lis pendens on real estate, or any interest therein, situated in the county of suit, in furtherance of the setting aside of a fraudulent conveyance, of subjection of property under return of nulla bona, tracing a trust fund, enforcing an equitable vendor's lien, *or otherwise,* he shall file for record in the register's office of the county an abstract, certified by the clerk, containing the names of the parties to such suit, a description of the real estate affected, its ownership, and a brief statement of the nature and amount of the lien sought to be fixed.

(b) Until same is so filed, so far as concerns the right of bona fide purchasers and encumbrancers, for value, of the realty, or any interest therein, they shall not be affected. (Emphasis added.)

Plaintiff maintains its state court action against the debtor is among those "otherwise" within the circumscription of Tenn. Code Ann. § 20–3–101 (1980). Further, based on this statute, plaintiff asserts it is a lienor of the debtor's six-acre tract, its lien dating from the registration of its notice of lien lis pendens on February 17, 1982.

In support of its position plaintiff cites *Cannon Mills, Inc. v. Spivey,* 208 Tenn. 419, 346 S.W.2d 266 (1961), a priority dispute involving a lot owned by defendant Spivey, an insolvent. Complainant, a judgment creditor with a nulla bona return, filed a general creditors' bill against Spivey on October 18, 1957. The lot at issue was specifically described in complainant's bill, which sought: (1) appointment of a receiver of

the agreed compensation upon completion of the construction documents phase.

3. See note 1 and judgments entered in this proceeding on March 28 and July 22, 1983.

4. Exhibit 5, plaintiff's letter of January 28, 1982, to Lon Boyd and Loyce Franklin, recites in part: "You will remember that on April 30, 1981, your company entered into a contract with my firm for architectural services in which it was agreed that my minimum fee, in the event the project was abandoned, would be $24,000.00. Nothing has been paid on this account." This exhibit is inadmissible under

the parol evidence rule. The contract between plaintiff and the debtor (Ex. 1) does not include a term limiting payment to the architect to $24,000.00 on the contingency of abandonment of the project.

Article 8.4 of the contract recites: "This Agreement represents the entire and integrated agreement between the Owner and the Architect and supersedes all prior negotiations ... either written or oral." Under the terms of the agreement plaintiff is entitled to 75% of the contract price, or $64,650.00.

Spivey's property; (2) subjection of Spivey's property to pay his debts; and (3) to require other creditors to assert their claims against Spivey in complainant's cause. On October 23, 1957, only five days after the filing of complainant's general creditors' bill, American Oil Company, another judgment creditor of Spivey, caused an execution to be issued. The controverted lot was levied upon pursuant to the American Oil execution on October 29, 1957, and a sheriff's sale scheduled for January 10, 1958. Previous to the sale date, on November 1, 1957, complainant filed a notice of lien lis pendens in the appropriate register's office. Complainant's counsel appeared at the January 10, 1958, sheriff's sale and announced that the lot was subject to complainant's suit. The sale proceeded nonetheless; American Oil was the successful bidder. American National Bank and Trust Company (Bank) and New-Tex Hosiery Corporation, two other judgment creditors of Spivey, undertook to redeem the lot under former Tenn.Code Ann. § 64–808 (1976). In accordance with a consent order, the lot was sold with the agreement that all rights and priorities of the parties should attach to the proceeds. The Bank and New-Tex maintained that they were entitled to priority on the theory that American Oil acquired good title to the lot pursuant to its levy and sale. According to the Bank and New-Tex, complainant did not acquire a lien when its general creditors' bill was filed because no attachment was concurrently issued nor was a receiver appointed. The Tennessee Supreme Court decided that the lot was impounded, in *custodia legis*, as of the filing date of complainant's bill without any attachment. Consequently, the sheriff's sale to American Oil was invalid; the Bank and New-Tex took no title to the lot.

The *Cannon Mills* decision was governed by former Tenn.Code Ann. § 26–604 (1955), recodified in verbatim as Tenn.Code Ann. § 26–4–104 (1980). The statute enacts:

> *Lien lis pendens.*—The creditor has a lien lis pendens upon the property of defendant situated in the county of suit, if properly described in the bill of complaint, on the filing of the bill, so far as concerns the pursued defendant; and he may have a lien lis pendens upon all property, so described, as against bona fide purchasers and encumbrancers, for value, upon registration of an abstract of the claimed lien as provided by this Code.

Hence, the complainant in *Cannon Mills* was statutorily entitled to a lien against the controverted lot, as of the date of the filing of the bill, as against all persons with the exception of bona fide purchasers and encumbrancers for value. Since American Oil neither qualified as a bona fide purchaser nor an encumbrancer for value, complainant was entitled to priority vis-a-vis the American Oil transferees.

■ The basis for the *Cannon Mills* decision readily distinguishes it from the instant case. The complainant creditor in *Cannon Mills* held a nulla bona return and was entitled to a lien on the authority of Tenn.Code Ann. § 26–604 (1955), not Tenn. Code Ann. § 20–301 (1955), the predecessor of Tenn.Code Ann. § 20–3–101 (1980). The principal argument of plaintiff herein relies solely upon the authority of Tenn.Code Ann. § 20–3–101 (1980) for the creation of plaintiff's asserted lien right. In contradistinction to the facts in *Cannon Mills,* no statutory authority existed as of February 17, 1982, to support plaintiff's asserted lien.

*Saghi v. Walsh (In re Gurs),* 27 B.R. 163 (Bkrtcy. 9th Cir.1983), illustrates the effect of filing a notice of lis pendens. Plaintiffs in *Saghi v. Walsh* maintained that the debtors held record title to certain commercial property as trustees of either a constructive or resulting trust in plaintiffs' favor. Despite the commencement of a prepetition state court action and the recordation of a lis pendens by one of the plaintiffs, the trial court granted summary judgment to the trustee on the theory his rights under 11 U.S.C.A. § 544(a)(3) (1979) were superior to any asserted by the plaintiffs. The bankruptcy appellate panel determined that under applicable state law (California) the trustee was bound by facts ascertainable from both Saghi's lis pendens and the pleadings filed as well as any other facts

discoverable upon a reasonable inquiry. The appellate panel reversed the order for summary judgment and remanded for a determination of both the relationship of the plaintiffs' claims to the lis pendens notice and the scope of the notice.

■ As in *Saghi v. Walsh,* the plaintiff's notice of lien lis pendens is constructive notice to the defendant trustee of plaintiff's claim against the debtor's six-acre tract. However, filing a notice of lien lis pendens pursuant to Tenn.Code Ann. § 20–3–101 (1980) does not in and of itself create a lien. Such a filing is merely a procedural step.[5] Indeed, the operative language of the statute manifests its procedural character: "When any person ... shall seek to fix a lien lis pendens on real estate ... he shall file ...." Tenn.Code Ann. § 20–3–101(a) (1980). The statute recites "shall seek to fix a lien lis pendens;" it does not create a lien lis pendens. There must be some other authority, equitable or otherwise, providing the basis for a lien right. *See* 10A G. Thompson, *Commentaries on the Modern Law of Real Property* § 5304 (Repl.1957).

### III

Tenn.Code Ann. § 66–11–102 (Supp.1982) was amended in 1982 to add a new subsection which recites in relevant part:

> (c)(1) There shall be a lien upon any lot of ground or tract of land upon which a house or structure has been erected, demolished, altered, repaired, or improvements made, by special contract with the owner or his agent, in favor of any person licensed to practice architecture ... for architectural ... services performed on such tract or building. The lien shall secure the agreed contract price thereof or a reasonable price for the services performed by such architect ....

The effective date of this amendment was April 1, 1982, a date six weeks subsequent to the commencement of plaintiff's state court action against the debtor and the concomitant recordation of the notice of lien lis pendens.

■ On July 19, 1983, the court granted plaintiff's motion to amend its pleading to request the court to retrospectively apply Tenn.Code Ann. § 66–11–102(c) (Supp. 1982). A procedurally remedial statute may constitutionally be retrospectively applied. See *Anderson v. Memphis Housing Authority,* 534 S.W.2d 125 (Tenn.Ct.App. 1975), *cert. denied.* However, Tenn.Code Ann. § 66–11–102(c) (Supp.1982) is a substantive amendment. As a general rule of jurisprudence, "[I]t is of the very essence of a new law that it shall apply to future cases, and such must be its construction, unless the contrary clearly appears." *McEwen v. Den,* 65 U.S. (24 How.) 242, 244, 16 L.Ed. 672 (1861). Furthermore, quoting former Justice Buchannan's opinion in an election dispute case:

> It is a rule of statutory construction that all statutes are to be construed as having only a prospective operation, unless the purpose and intention of the Legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used. In every case of doubt, the doubt must be solved against the retrospective effect. 36 Cyc. 1205.

*Heiskell v. Lowe,* 126 Tenn. 475, 491, 153 S.W. 284, 288 (1912). In a more recent opinion involving the issue of retrospective application of a statute, Justice Burnett wrote:

> Of course, what we look to in a statute is the intent of the Legislature, and it is our duty, unless such intent plainly appears, to give the act prospective application rather than retrospective.

*State v. City of Columbia,* 210 Tenn. 514, 522–23, 360 S.W.2d 39, 43 (1962).

■ Even assuming *arguendo* that retrospective application is constitutionally permissible, the Tennessee Legislature gave no indication whatsoever that it intended the 1982 amendment of Tenn.Code Ann.

---

**5.** It is noteworthy that the statute relied upon by plaintiff in its principal argument to support its lien claim is found in Title 20, Civil Procedure, of the Tennessee Code Annotated, as opposed to Title 25, Judgments, Title 26, Execution, or Title 66, Property.

§ 66–11–102 (Supp.1982) should be retrospectively applied. Consequently, the court declines to apply Tenn.Code Ann. § 66–11–102(c) (Supp.1982) retrospectively to create a lien in favor of plaintiff. Further, in the opinion of the court, no equitable basis for awarding a lien to plaintiff exists under the facts. The prepetition benefit of plaintiff's services to the debtor is apparently valueless to the debtor's estate, albeit through no fault of the plaintiff.

This Memorandum constitutes findings of fact and conclusions of law required by Bankruptcy Rule 7052.