**In re Owen Carl BELL and Marla Sue Bell, Debtors,**

**UNION PLANTERS NATIONAL BANK, Margaret L. Behm, Trustee and Thomas E. Watts, Jr., Plaintiffs,**

**v.**

**Owen Carl BELL, Marla Sue Bell, David G. Bell and Betty Jo Mabry, Defendants.**

**Bankruptcy Nos. 384–01433. Adv. Nos. 384–0440, 384–0443 and 385–0116.**

United States Bankruptcy Court, M.D. Tennessee.

Nov. 22, 1985.

C. Kinian Cosner, Jr., Cosner & Waldschmidt, Nashville, Tenn., for debtors.

John J. Mulrooney, Memphis, Tenn., for Union Planters Bank.

Margaret L. Behm, Shipley & Behm, Nashville, Tenn., for trustee.

Wm. Caldwell Hancock, Waddey & Jennings, Nashville, Tenn., for David G. Bell and Betty Jo Mabry.

Thomas E. Watts, Jr., Nashville, Tenn., pro se.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The questions presented on these preliminary motions are whether Thomas E. Watts, Jr. ("Watts") and Union Planters National Bank ("Union Planters") have liens against the property which is the subject of this fraudulent conveyance action and whether those liens are subject to

avoidance by the trustee. I find that both have perfected liens and neither lien is avoidable by the trustee.

This is a core proceeding. 28 U.S.C. §§ 157(b)(2)(H) and (K). The following constitute findings of fact and conclusions of law. Bankruptcy Rule 7052.

## FACTS

The facts are stipulated.

1974: Owen C. Bell acquired real property located in Davidson County, Tennessee ("Bakers Road property").

February 16, 1978: Marla S. Bell, wife of Owen C. Bell, acquired real property located in Davidson County, Tennessee ("Brick Church Pike property").

September 2, 1981: Union Planters sued Owen C. Bell and Marla S. Bell in the Circuit Court of Shelby County, Tennessee, to recover on a note and a guaranty (the "Union Planters action"). The action was scheduled for trial on November 16, 1982.

September 15, 1982: Owen C. Bell executed a warranty deed transferring the Bakers Road property to his brother, David G. Bell, and Marla S. Bell executed a warranty deed transferring the Brick Church Pike property to her sister, Betty Jo Mabry.[1] The deeds were recorded in Davidson County, Tennessee.

November 16, 1982: The Circuit Court rendered judgment against the debtors in favor of Union Planters.

November 19, 1982: Watts, a creditor of the debtors, filed suit in Chancery Court of Davidson County, Tennessee against the debtors and against David G. Bell and Betty Jo Mabry to set aside the fraudulent conveyances. Watts filed a notice of *lis pendens* against both properties in the Office of Register, Davidson County, Tennessee.

---

1. For purposes of these motions and to permit the court at this preliminary stage to focus only on the relative rights of the plaintiffs, the trustee, Watts and Union Planters have stipulated that these conveyances constituted fraudulent transfers under Tennessee law.

December 16, 1982: The debtors filed a motion for a new trial in the Union Planters action.

December 17, 1982: Union Planters recorded its judgment in the Office of Register, Davidson County, Tennessee.

February 28, 1983: The motion for a new trial was denied.

March 29, 1983: Debtors appealed the Union Planters' judgment to the Court of Appeals of Tennessee.

April 13, 1983: Union Planters filed a motion to set bond pending appeal.

April 29, 1983: Debtors filed a response opposing Union Planters' motion.

May 3, 1983: The Circuit Court ordered the debtors to file a bond as a condition for stay pending appeal.

May 18, 1983: Debtors filed a motion to obtain review of the lower court stay order.

May 25, 1983: A Court of Appeals order set a lower bond. Bond was never posted by the debtors.

March 15, 1984: The Court of Appeals affirmed the judgment in favor of Union Planters.

April 5, 1984: The Court of Appeals denied debtors' petition to rehear.

April 17, 1984: Union Planters filed suit in the Chancery Court for Davidson County, Tennessee against the debtors and David G. Bell and Betty Jo Mabry to set aside the fraudulent conveyances.

April 23, 1984: Union Planters filed a notice of *lis pendens* against the Bakers Road and Brick Church Pike properties in the Office of Register, Davidson County, Tennessee.[2]

May 25, 1984: The debtors filed a Chapter 7 petition.

## DISCUSSION

As noted in the margin, it is assumed for purposes of these motions that the convey-

ances were fraudulent as to the debtors' creditors. Upon this assumption, Tennessee law entitled both Union Planters and Watts to set aside the conveyances.[3] TENN.CODE ANN. §§ 29–12–101, 29–12–104, 66–3–310 (Michie 1980); *see Shepard v. Lanier*, 192 Tenn. 608, 241 S.W.2d 587, 594 (1951); *Covington v. Murray*, 220 Tenn. 265, 416 S.W.2d 761 (1967); *Baker v. Penecost*, 171 Tenn. 529, 106 S.W.2d 220 (1937). A defrauded creditor may bring suit to set aside the conveyance even before pursuing its underlying claim to judgment. TENN.CODE ANN. § 29–12–101 (Michie 1980).

Both Union Planters and Watts have valid liens against the fraudulently conveyed property which are not avoidable by the trustee.

Watts' lien arose and was perfected November 19, 1982 when he filed suit in Chancery to set aside the fraudulent conveyance and filed his notice of *lis pendens* pursuant to TENN.CODE ANN. § 20–3–101 (Michie 1980). Watts was entitled to a lien by virtue of TENN.CODE ANN. § 29–12–101 and § 26–4–104 (Michie 1980). Section 29–12–101 provides that any creditor may file a bill in chancery to set aside a fraudulent conveyance of property and subject that property to the satisfaction of the debt. TENN.CODE ANN. § 29–12–101 (Michie 1980). Section 26–4–104 provides that the creditor has a lien *lis pendens* upon all of the defendant's property situated in the county of suit if properly described in the complaint upon the filing of suit. TENN. CODE ANN. § 26–4–104 (Michie 1980). *See Cannon Mills, Inc. v. Spivey*, 208 Tenn. 419, 346 S.W.2d 266 (1961); *Roberts v. Frogge*, 149 Tenn. 181, 258 S.W. 782 (1923). That lien becomes perfected against subsequent bona fide purchasers and encumbrancers for value upon the registration of an abstract or notice as provid-

---

2. Union Planters has conceded that its filing of the notice of lien *lis pendens* constituted a preference under § 547 of the Code.

3. The trustee in bankruptcy would also be entitled to avoid the conveyances, 11 U.S.C. § 544(b), hence the need for this preliminary determination of the rights as among the plaintiffs in this adversary proceeding.

ed in § 20–3–101. Although Watts' suit has never been reduced to judgment, that is not necessary for the creation, attachment and perfection of this lien. TENN. CODE ANN. § 29–12–101 provides that "any creditor, *without first having obtained a judgment at law*, may file his bill ... to set aside fraudulent conveyances of property." TENN.CODE ANN. § 29–12–101 (Michie 1980) (emphasis added).

The trustee, relying on the *Cannon Mills* case, argues that Watts' filing of the notice of *lis pendens* was insufficient to create a lien on the properties. *Id.* 346 S.W.2d at 266. *Cannon Mills* was subjected to thoughtful analysis by Judge Clive Bare in *In re Airport–81 Nursing Care, Inc.*, 32 B.R. 960 (Bankr.E.D.Tenn.1983). Judge Bare held that *Cannon Mills* stood for the proposition that the filing of a notice of lien *lis pendens* pursuant to TENN.CODE ANN. § 20–3–101 does not create a lien, it is merely a procedure for giving notice of a lien arising by operation of other law. In this proceeding, Watts was entitled to a lien against the property by operation of TENN.CODE ANN. §§ 29–12–101 and 26–4–104. His filing of the notice of the lien *lis pendens* perfected that lien against bona fide purchasers and encumbrancers for value. TENN.CODE ANN. § 20–3–101(b) (Michie 1980).

■ Watts has jumped through all of the right hoops. He filed suit on November 19, 1982 naming the debtors, the fraudulent transferees and the property. He filed his notice of lien *lis pendens*. His lien was perfected well outside the 90-day limit for avoiding preferences under § 547 of the Bankruptcy Code and the trustee's rights under § 544 do not permit the avoidance of this lien because the filing of the notice of lien *lis pendens* gave Watts rights even as against a subsequent bona fide purchaser for value.

Union Planters acquired its lien December 17, 1982, when it recorded its judgment. TENN.CODE ANN. § 25–5–101 (Michie Supp.1985); *cf. Baker v. Penecost*, 171 Tenn. 529, 534, 106 S.W.2d 220, 222 (1937). This lien subjected all of the debtors' property, including property which had been fraudulently conveyed in advance of the judgment, to the satisfaction of the debtors' obligation to Union Planters. *Cf. Lawson v. Liberty National Bank and Trust Co.*, 18 B.R. 384 (W.D.N.Y.1982) (involving similar New York law). Tennessee law provides that a conveyance in fraud of a creditor, when challenged by the creditor, is absolutely void for every purpose as if it never existed. *See Covington*, 416 S.W.2d at 761 and cases cited. Again, assuming that the conveyances are fraudulent as to Union Planters, upon recovery, the bank's recorded judgment lien is attached to the property as if it had never been conveyed.

■ The trustee does not dispute the origins of Union Planters' lien, but contends that Union Planters lost its judgment lien for failure to execute upon the property within 12 months of the date of judgment. TENN.CODE ANN. § 25–5–105 (Michie 1980).[4] The trustee argues that TENN.CODE ANN. § 25–5–106 (Michie Supp.1985),[5] which tolls the 12-month period if sale is "prevented" by injunction or by appeal, is inapplicable because the debtors never filed a bond and thus execution was never stayed.

The trustee's position is without merit. Section 25–5–106 is unambiguous on its

---

4. TENN.CODE ANN. § 25–5–105 (Michie 1980) provides:

   The lien given by this chapter will be lost, unless an execution is taken out and the land sold within twelve (12) months after the rendition of the judgment or decree.

5. TENN.CODE ANN. § 25–5–106 (Michie Supp. 1985) provides:

If the sale within the twelve (12) months is prevented by injunction or by appeal to the Supreme Court, or Court of Appeals, the lien shall be continued, provided the creditor shall issue execution and sell the land within one year after the injunction is dissolved, the judgment or decree affirmed, or adverse legal proceeding dismissed.

face. It provides in the disjunctive that the limitations period is tolled either "by injunction or by appeal." If the Tennessee legislature intended the toll to take effect on appeal only upon the issuance of a stay, it would have said so. There would have then been no need to include the term appeal in the statute since the stay would be subsumed under the term injunction. Though Union Planters was not precluded from executing upon the properties by reason of defendants' failure to post bond, the statute provided that it did not have to proceed to execution while its judgment was on appeal.[6]

The limitations period was tolled for Union Planters until April 5, 1984 when the Court of Appeals denied debtors' petition to rehear. Union Planters commenced proceedings to subject the property to its lien on April 17, 1984, but those proceedings were stayed on May 25, 1984 by the filing of the debtors' Chapter 7 petition. 11 U.S.C. § 362. The automatic stay has been in effect continuously since that time.

■ The bank's lien arose well outside the 90-day preference period. Section 544 gives the trustee the status of a bonafide purchaser or judgment lien creditor of the debtor as of the commencement of the case. Section 544(a) does not shield the trustee from the prior recorded judgment lien of Union Planters. TENN.CODE ANN. § 25–5–101(c) (Michie Supp.1985). *See Saghi v. Walsh (In re Gurs),* 27 B.R. 163, 11 BANKR.CT.DEC. (CRR) 698, *reh'g denied,* 34 B.R. 755 (Bankr. 9th Cir.1983).

An appropriate order will be entered.[7]

6. It is at least arguable that the 12-month limitation period within which one must execute on a judgment lien against property works to the benefit of the debtor/landowner by requiring prompt action by the creditor or the lien is lost. Where the debtor appeals the underlying judgment, can the debtor complain that the creditor can defend the judgment on appeal without being forced by the passage of time to also sell the debtor's property?

7. Watts has also asked this court to determine whether he is entitled to interest pursuant to 11

U.S.C. § 506(b) from the date of the filing of his amended complaint in the Chancery Court suit, and whether he is entitled to levy upon the properties and sell them to satisfy his claim for attorney's fees. The former issue was not briefed by the other parties nor was it argued at the hearing on the summary judgment motion and I decline to resolve it at this time. The latter issue is more appropriately raised as a motion for relief from the stay pursuant to § 362(d) and is inappropriate for decision at this time.