In re June Elizabeth Isenberg
**RESSLER** a/k/a June I.
Ressler, Debtor.

**John D. KREIS, Trustee of June I.
Ressler, Plaintiff,**

v.

**David SHOPE and Denise
Shope, Defendants.**

Bankruptcy No. 3–85–00265.
Adv. No. 3–85–1285.

United States Bankruptcy Court,
E.D. Tennessee.

May 8, 1986.

Wade M. Boswell, Knoxville, Tenn., for plaintiff/trustee.

Kennerly, Montgomery & Finley, P.C., John B. Waters, III, Knoxville, Tenn., for defendants.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

On April 20, 1983, defendants filed a notice of lien lis pendens, Tenn.Code Ann. § 20–3–101 (1980), in the Register's Office for Knox County, Tennessee. On June 8, 1984, defendants were awarded a judgment against the debtor in the amount of $52,-726.46. On December 11, 1984, defendants recorded the judgment in the Register's Office. Bankruptcy ensued on February 28, 1985. The trustee seeks to avoid the "transfer" as a preference.[1] 11 U.S.C.A. § 547(b) (West 1979 & Supp.1986). Further, the trustee asserts superior rights as a hypothetical judicial lien creditor. 11 U.S.C.A. § 544(a)(3) (West Supp.1986).

### I

The facts have been stipulated and are set forth as follows:

### STIPULATIONS

1. Prior to bankruptcy, the debtor owned certain real estate located at 3512 Blow Drive, Knoxville, Tennessee, which is the subject of this action.

2. By note dated August 1, 1980, the debtor was indebted to the defendants, David Shope and Denise Shope. The debt was secured by a deed of trust encumbering other property of the debtor located on Alcoa Highway, Knox County, Tennessee.

3. On April 15, 1983, the Shopes filed a complaint in the Knox County Chancery Court against the debtor and her former husband seeking judgment for $72,239.05, plus accrued interest and other charges, pursuant to the note and the deed of trust.

4. In the complaint, the Shopes alleged that the debtor intended to sell the property located at 3512 Blow Drive and fraudulently dispose of the proceeds thereof. The Shopes sought an injunction to prevent the debtor from selling the property.

---

1. "'[T]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property, or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C.A. § 101(48) (West Supp.1986).

5. In connection with the complaint, the Shopes filed a notice of lien lis pendens, claiming a lien on the Blow Drive property. The notice of lien lis pendens was recorded on April 20, 1983, in Lien Book 32, Page 981, in the Knox County Register's Office. The notice was certified by Gustava Cheatham, a clerk in the Knox County Register's Office.

6. On May 18, 1983, the Shopes foreclosed the deed of trust and sold the Alcoa Highway property for $35,000.00. The Shopes then filed a supplementary complaint reflecting a credit for the sale price against the amount sought in the complaint.

7. By "Judgment Order" entered in the Knox County Chancery Court on June 8, 1984, the Shopes were awarded judgment in the amount of $52,726.46 against the debtor. The judgment was recorded on December 11, 1984, in Lien Book 35, Page 721, in the Register's Office for Knox County, Tennessee.

8. The debtor filed her petition in this chapter 7 bankruptcy case on February 28, 1985. John D. Kreis was appointed trustee on March 5, 1985.

9. The Shopes filed a secured proof of claim in the bankruptcy case asserting a judgment lien against the Blow Drive property.

10. Pursuant to orders of this court, the trustee sold the Blow Drive property, free and clear of all liens, for the sum of $94,000.00. The proceeds of the sale were first applied to sale commissions, sale costs, and other undisputed liens against the property. The remainder of the proceeds, $13,815.16, is being held by the trustee subject to the lien claimed by the Shopes.

11. The sum of $13,815.16 constitutes all of the assets collected or claimed by the trustee. The amount owing unsecured creditors greatly exceeds that sum.

## II

The trustee seeks to avoid the judgment lien on the Blow Drive property as a preferential transfer under § 547 of the Bankruptcy Code. Section 547(e)(1) provides in part:

> For the purposes of this section—
>
> (A) a transfer of real property other than fixtures ... is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee....

11 U.S.C.A. § 547(e)(1) (West 1979).

The trustee argues that "the transfer was made at the time of the filing [in the Register's Office] of the judgment [December 11, 1984], being the date when a bona fide purchaser could not have acquired an interest superior to the transferee."[2] Asserting the latest date that the "transfer" occurred was the entry of the judgment in June 1984, defendants insist that their interest was perfected when the judgment was entered because they had previously filed a notice of lien lis pendens.

Tenn.Code Ann. § 20-3-101 (1980) enacts:

> *Filing of abstract—Effect of not filing.* —(a) When any person, in any court of record, by declaration, petition, bill or cross bill, shall seek to fix a lien lis pendens on real estate, or any interest therein, situated in the county of suit, in furtherance of the setting aside of a fraudulent conveyance, of subjection of property under return of nulla bona, tracing a trust fund, enforcing an equitable vendor's lien, or otherwise, he shall file for record in the register's office of the county an abstract, certified by the clerk, containing the names of the parties to such suit, a description of the real estate affected, its ownership, and a brief statement of the nature and amount of the lien sought to be fixed.
>
> (b) Until same is so filed, so far as concerns the rights of bona fide purchasers and encumbrancers, for value, of the realty, or any interest therein, they shall not be affected.

---

**2.** Brief of Plaintiff at 3.

This court previously considered this statute in denying an architectural firm's claim it was entitled to a lien by virtue of a notice of lien lis pendens filed in conjunction with a complaint to enforce a contractual claim:

> ▪ As in *Saghi v. Walsh* [27 B.R. 163 (Bankr. 9th Cir.1983) ], the plaintiff's notice of lien lis pendens is constructive notice to the defendant trustee of plaintiff's claim against the debtor's six-acre tract. However, filing a notice of lien lis pendens pursuant to Tenn.Code Ann. § 20–3–101 (1980) does not in and of itself create a lien. Such a filing is merely a procedural step. Indeed, the operative language of the statute manifests its procedural character: "When any person ... shall seek to fix a lien lis pendens on real estate ... he shall file ...." Tenn. Code Ann. § 20–3–101(a) (1980). The statute recites "shall seek to fix a lien lis pendens;" it does not create a lien lis pendens. There must be some other authority, equitable or otherwise, providing the basis for a lien right. See 10A G. Thompson, *Commentaries on the Modern Law of Real Property* § 5304 (Repl. 1957).

*David Leonard Assoc. v. Airport–81 Nursing Care, Inc.,* 32 B.R. 960, 964 (Bankr.E. D.Tenn.1983).[3]

▪ While defendants concede a notice of lien lis pendens does not in and of itself create a lien, they maintain that their notice of lien lis pendens is effective notice of their claim as to the trustee. Defendants assert: "[F]rom and after the entry of judgment in the *Shope v. Ressler* case there was notice to the Trustee, as well as the rest of the public, of the Shope judgment." [4] Nonetheless, the entry of the judgment in the chancery action did not create, much less perfect, a lien. Further, unlike *Union Planters Nat'l Bank v. Bell,* 55 B.R. 246 (Bankr.M.D.Tenn.1985), no lien right arose upon the filing of defendants' complaint in the chancery action. In *Bell,* citing Tenn.Code Ann. § 29–12–101 (1980) [5] and § 26–4–104 (1980),[6] Judge Lundin determined that a creditor entitled to avoid a fraudulent conveyance perfects a lien by filing a complaint and notice of lien lis pendens. *Bell* is materially distinguishable from the instant proceeding. Whereas defendants' chancery action sought to enjoin a conveyance, *Bell* involved completed fraudulent conveyances.[7] In *Bell* Judge Lundin noted a statutory basis, apart from Tenn.Code Ann. § 20–3–101 (1980), for the creation of a creditor's lien upon filing suit to avoid a fraudulent conveyance. Absent an attachment writ or other extraordinary circumstance, no similar lien arises upon the filing of a complaint to enforce a note.

Tenn.Code Ann. § 25–5–101(b) (Supp. 1985) provides:

> Judgments and decrees obtained from and after July 1, 1967 in any court of record and judgments in excess of five hundred dollars ($500) obtained from and after July 1, 1969 in any court of general

---

3. A footnote accompanying the quotation provides: "It is noteworthy that the statute relied upon by plaintiff in its principal argument to support its lien claim is found in Title 20, Civil Procedure, of the Tennessee Code Annotated, as opposed to Title 25, Judgments, Title 26, Execution, or Title 66, Property."

4. Brief Submitted by Defendants at 4.

5. *Fraudulent conveyances and other devices.* —Any creditor, without first having obtained a judgment at law, may file his bill in chancery for himself, or for himself and other creditors, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering and delaying creditors, and subject the property, by sale or otherwise, to the satisfaction of the debt.

6. *Lien lis pendens.*—The creditor has a lien lis pendens upon the property of defendant situated in the county of suit, if properly described in the bill of complaint, on the filing of the bill, so far as concerns the pursued defendant; and he may have a lien lis pendens upon all property, so described, as against bona fide purchasers and encumbrancers, for value, upon registration of an abstract of the claimed lien as provided by this Code.

7. For purposes of the motions before the court in *Bell,* the debtors' trustee and the two creditors involved stipulated that certain conveyances were fraudulent.

sessions of this state shall be liens upon the debtor's land from the time a certified copy of said judgment or decree shall be registered in the lien book in the register's office of the county where the land is located. If said records are kept elsewhere, no lien shall take effect from the rendition of said judgments or decrees unless and until a certified copy of the same are registered as otherwise provided by law.

Accordingly, defendants did not acquire a lien upon the debtor's property in Knox County until their judgment was registered on December 11, 1984, in the Register's Office.[8]

### III

Section 547(b) of Title 11 of the United States Code enacts:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The registration of defendants' judgment against the debtor was a transfer of an interest of the debtor in property. 4 *Collier on Bankruptcy* ¶ 547.12[1] (15th ed. 1985). The transfer, based on an antecedent debt, for the benefit of the defendants (creditors), occurred within ninety (90) days before the filing of the debtor's bankruptcy petition. Although the debtor is presumed to have been insolvent during the ninety (90) days immediately preceding bankruptcy, 11 U.S.C.A. § 547(f) (West 1979), placing the burden on the creditor to come forward with evidence to rebut the presumption, the burden of proof as to the risk of nonpersuasion remains upon the trustee. See Fed.R.Evid. 301. Sworn to on February 26, 1985, debtor's schedules, reporting debts totalling $135,705.45 and assets valued at $145,304.13, suggest solvency. However, debtor's schedules reflect that the value of the Blow Drive property is $140,000.00, some $46,000.00 more than the postpetition sale price of $94,000.00. There is no proof suggesting that the value of the Blow Drive property was greater at the time of registration of defendant's judgment than at the time of the trustee's sale of the property. Hence, the court finds that the debtor was insolvent when defendants' judgment was registered on December 11, 1984.[9] Since the $13,815.16 at issue represents all of the assets collected or claimed by the trustee, and the

---

**8.** Subsection (c) of Tenn.Code Ann. § 25–5–101 (Supp.1985) recites in part:

Attachments, orders, injunctions and other writs affecting title, use or possession of real estate, issued by any court shall be effective against any person having, or later acquiring, an interest in such property who is not a party to the action wherein such attachment, order, injunction or other writ is issued only after an appropriate copy or abstract, or a notice of lis pendens, is recorded in the register's office of the county wherein the property is situated.

Because defendants did not obtain an attachment, order, injunction, or other writ affecting title in the chancery action, their reliance on this provision is misplaced.

**9.** In her statement of financial affairs, attached to the parties' amended stipulation, debtor reports no transfer of real or personal property within the year preceding the filing of her petition, except the transfer of some unused clothing.

claims of unsecured creditors exceed this sum, the transfer effected by registration of defendants' judgment would enable them to receive more than they would have if the transfer had not been made and payment had been made on their claim pursuant to the provisions of the Bankruptcy Code.

■ Although the trustee has established all of the elements of a preference, defendants contend the transfer is excepted from avoidance under 11 U.S.C.A. § 547(c)(6) (West Supp.1986), which excepts avoidance of a transfer "that is the fixing of a statutory lien that is not avoidable under section 545 of this title." Contrary to defendants' contention, their judgment lien is not a "statutory lien" in the context of the Bankruptcy Code. Defendants' judgment lien is a "judicial lien," a "lien obtained by judgment...." 11 U.S.C.A. § 101(30) (West Supp.1986). Judicial liens are expressly excepted from the Code's definition of "statutory lien." [10]

In conclusion, although the notice of lien lis pendens provided constructive notice of defendants' claim, they did not obtain a lien against the Blow Drive property until they registered their judgment. Tenn.Code Ann. § 25–5–101(b) (Supp.1985). Because the registration of their judgment is a voidable preference, the trustee is entitled to the $13,815.16 remaining from the proceeds of the Blow Drive property.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

---

**10.** Bankruptcy Code § 101(45) provides:
"[S]tatutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or

not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.
11 U.S.C.A. § 101(45) (West Supp.1986).