In re Clairen D. HOGG and Jeannette Hogg, Debtors.

FIRST POTTER COUNTY BANK and Clyde Starks, Receiver, Plaintiffs,

v.

Clairen D. HOGG, Jeannette Hogg, and Thomas M. Maher, Trustee, Defendants.

Bankruptcy No. 383–00002.
Adv. No. 383–0026.

United States Bankruptcy Court, D. South Dakota.

Dec. 12, 1983.

Craig E. Smith, Neumayr & Smith, Gettysburg, S.D., for plaintiffs First Potter County Bank and Clyde Starks, Receiver.

William Jason Groves, Rapid City, S.D., for defendants Clairen D. Hogg and Jeannette Hogg.

Thomas M. Maher, Maher, Bastian & Bode, pro se.

Robert J. Haar, Asst. U.S. Atty. on behalf of the United States of America, Farmers Home Administration.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

The facts in this case are not complicated. The First Potter County Bank of Gettysburg, South Dakota (bank), made a loan to the Gettysburg Livestock Exchange, Inc. (corporation), which was backed by a ninety per cent guarantee of the Farmers Home Administration. The loan was secured by a first mortgage on the Gettysburg sales barn, a restaurant, lounge, sundry personal property, and the personal guarantee of the debtors, Clairen and Jeannette Hogg, who are the sole officers and shareholders of the corporation. Eventually, the corporation defaulted on its obligations to the bank and the bank proceeded to foreclose on the collateral. Because the collateral pledged to secure the loan was not sufficient to cover the corporate indebtedness, the bank obtained a deficiency judgment against the debtors based on the debtors' personal guarantees of the corporation's debt.

Prior to the corporation's defaulting on its loan to the bank, the debtors sold their ranch to generate $100,000. in cash which was used to purchase a certificate of deposit (c.d.) from the First National Bank of Redfield, South Dakota. The c.d. was issued in the names of the debtors and was subsequently assigned to the New Hampshire Insurance Company as security for the insurer issuing a livestock seller's bond in favor of the corporation. The New Hampshire Insurance Company took physical possession of the c.d. at its offices located in New Hampshire.

The bank attempted to execute on its deficiency judgment against the debtors by serving a summons and affidavit of garnishment upon the First National Bank of Redfield on August 19, 1982, and on the New Hampshire Insurance Company on August 20, 1982. The bank served a notice of garnishment on the debtors and the corporation on August 25, 1982. The bank did not obtain physical possession of the c.d. until October 20, 1982. The debtors filed their joint petition in bankruptcy under chapter 7 on January 17, 1983.

The trustee has challenged the transfer of the c.d. from the debtors to the bank as a preferential transfer under 11 U.S.C. § 547. The purpose of section 547 is to discourage creditors from racing to the courthouse to dismember the debtor during his slide into bankruptcy and to facilitate equality of distribution among similar creditors. *In re Arnett,* 13 B.R. 267, 269 (Bkrtcy. E.D.Tenn.1981), *aff'd at* 17 B.R. 912 (D.C.E.

D.Tenn.). Subsection 547(b) prescribes the test for a preferential transfer:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
>> (A) on or within 90 days before the date of the filing of the petition; or
>>
>> (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
>>
>>> (i) was an insider; and
>>>
>>> (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
>> (A) the case were a case under chapter 7 of this title;
>>
>> (B) the transfer had not been made; and
>>
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

All of the five enumerated elements must be present to establish a transfer and the trustee has the burden of proof on each element by a preponderance of the evidence. *In re Gruber Bottling Works, Inc.,* 16 B.R. 348, 351 (Bkrtcy.E.D.Pa.1982). A preference has been defined as "... a transfer that enables a creditor to receive payment of a greater percentage of its claim against the debtor than it would have received if the transfer would not have been made and it had participated in the distribution of the assets of the bankruptcy estate." *In re Arnett, supra* at 268.

■ The trustee argues that the c.d. was transferred to the bank within the ninety-day statutory period prior to the filing of the debtors' bankruptcy petition and, in the alternative, that the bank is an insider and,

therefore, even if the transfer did not take place within the ninety-day period, it surely occurred within a year from the date the debtors filed their petition in bankruptcy. Because the Court concludes that the transfer of the c.d. to the bank is a preferential transfer within the ninety-day period, it need not and has not addressed the trustee's insider argument.

The bank does not dispute that the debtors transferred property to it on account of an antecedent debt made while the debtors were insolvent and that the transfer enabled it to receive more than it would have received in a liquidation had the transfer not occurred. Moreover, the record clearly reflects that the trustee has more than met his burden of proof on four of the five elements listed above. A $100,000. c.d. was transferred from the debtors to the bank. The transfer was on account of an antecedent debt as it arose from a previously acquired default judgment. The bank has failed to rebut the statutory presumption that the debtors were insolvent during the ninety days immediately preceding the date of the filing of the instant petition. *See* 11 U.S.C. § 547(f); *Matter of Lucasa Intern., Ltd.,* 14 B.R. 980, 982 (Bkrtcy.S.D.N.Y. 1981). It is uncontroverted that the bank will receive more if it is allowed to keep the c.d. that it would be entitled to in a liquidation had that transfer not occurred.

The dispute in this case centers around when the c.d. was transferred. Indeed, the dispositive issue is whether the service of a garnishment summons on a garnishee holding a c.d. perfects the garnishor's interest against a hypothetical creditor who holds a judicial lien arising out of a simple contract obtained subsequent to the service of the garnishment summons but prior to the garnishor taking actual possession of the c.d.

For purposes of 11 U.S.C. § 547, a transfer of personal property is perfected as defined in section 547(e)(1)(B) as:

> For the purposes of this section—
>
> . . . .
>
> (B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract

cannot acquire a judicial lien that is superior to the interest of the transferee.

A transfer is made as defined in 11 U.S.C. § 547(e)(2):

> For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—
>
> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;
>
> (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or
>
> (c) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—
>
> (i) the commencement of the case; and
>
> (ii) 10 days after such transfer takes effect between the transferor and the transferee.

Thus, it is clear that a transfer is made when it takes effect between the parties if it is perfected against judgment lien creditors then or within ten days thereafter. Otherwise, it is made when perfected or, if not perfected before bankruptcy, the transfer is deemed to have been made immediately before bankruptcy. *In re Kelley,* 3 B.R. 651, 654 (Bkrtcy.E.D.Tenn.1980). Subsection 547(e) requires the application of both federal and state law. State law determines when a transfer is "perfected," the so-called simple contract test, and federal law determines when a transfer is "made." *See In re Mailbag Intern., Inc.,* 28 B.R. 905, 907 (Bkrtcy.Conn.1983); *Matter of Canup Mechanical, Inc.,* 1 B.R. 703 (Bkrtcy. M.D.Fla.1979) (application of section 60(b) of the old Bankruptcy Act, the forerunner of 11 U.S.C. § 547(b), requires similar reference to state and federal law in regard to preferences).

In the instant case, the bank contends that it obtained a perfected interest in the c.d. when it served the garnishment summons on the garnishee, New Hampshire Insurance Company, on August 20, 1982. Furthermore, the bank also insists that the transfer was made on August 20, 1982. The bank cites several and the Court has discovered numerous bankruptcy decisions from other jurisdictions that have addressed the question of when a garnishor's interest in garnished property becomes perfected against a creditor on a simple contract with a judicial lien and the related question of when such a transfer is "made." *Matter of Woodman,* 8 B.R. 686 (Bkrtcy.W. D.Wis.1981) (under Wisconsin law, lien becomes effective when garnishment summons is served); *In re Burnham,* 12 B.R. 286 (Bkrtcy.N.D.Ga.1981) (lien arises when original garnishment summons is served); *In re Brinker,* 12 B.R. 936 (Bkrtcy.Minn. 1981) (service of garnishment summons creates a lien); *In re Evans,* 16 B.R. 731 (Bkrtcy.N.D.Ga.1982) (service of garnishment summons creates a lien if and when the debtor has rights in the property transferred); *In re Hallmark Properties, Inc.,* 22 B.R. 451 (Bkrtcy.Haw.1982) (post-judgment garnishment liens against debtors were perfected upon service of garnishee summons); *In re Ford,* 29 B.R. 364 (Bkrtcy.W.D.Mo. 1983) (a creditor having a perfected garnishment obtained outside the preference period prevails over a trustee's claim to those garnished funds). These decisions, however, are easily distinguished because perfection is determined by state law and, therefore, decisions construing state laws governing garnishment in other jurisdictions are not controlling in the District of South Dakota.

In further support of its position, the bank argues that S.D.C.L. 21–18–32 (1979) [1] and South Dakota case law establish "perfection" under state law as of the date of service of the garnishee summons. *See*

---

**1.** In case the answer of the garnishee shall show indebtedness to the defendant, he may pay the amount thereof to the officer having a warrant of attachment or writ of execution in the principal action, or to the clerk of the court; and the officer to whom such payment is made shall give him a receipt specifying the facts and such receipt shall be a complete discharge of all liability to any party for the amount so paid.

*Bowman v. Larsen,* 53 S.D. 246, 220 N.W. 489, 490 (1928) (effect of service of process is to place the property in custodia legis from the date of the service of process); *Bank of Centerville v. Gelhaus,* 60 S.D. 31, 242 N.W. 642 (1932) (service of prejudgment garnishee summons impresses property of defendant in the hands of garnishee with a lien in favor of the plaintiff).

If S.D.C.L. 21–18–32 (1979) were the only statute applicable to the instant case, the Court might be inclined to agree with the bank. This is especially true in light of the relevant, but old, decisions interpreting South Dakota garnishment law. There are, however, other applicable statutes that address the matter at issue, and they do so with greater specificity. Moreover, along these lines, it is important to note that neither S.D.C.L. 21–18–32 (1979) nor any other section of S.D.C.L. 21–18 (1979) expressly gives the garnishor a lien in the property garnished at the time the garnishee summons is served. In addition, the only South Dakota case that specifically concludes that a lien arises upon the service of a garnishee summons addresses prejudgment garnishment. *Bank of Centerville v. Gelhaus, supra.* Whereas, S.D.C.L. 21–18–1 (1979)[2] makes postjudgment garnishment available only if an execution is first issued and outstanding. *Central Lumber Co. v. Dougherty,* 43 S.D. 580, 181 N.W. 196 (1921). Consequently, other statutes, specifically those contained in S.D.C.L. 15–18 (1967) (entitled Execution of Judgments), must be consulted.

S.D.C.L. 15–18–20 (Supp.1983) prescribes the proper method of levying on personal property capable of manual delivery:

> A levy under a writ, warrant, or execution upon personal property capable of manual delivery, including bonds, promissory notes, or other instruments for the

payment of money must be made by taking the same into the officer's actual custody. He must thereupon without delay deliver a notice of levy to the person from whose custody such property is taken.

Doubtless, a c.d. falls within the definition of "or other instruments for the payment of money" contained in S.D.C.L. 15–18–20 (Supp.1983). Finally, and most importantly, S.D.C.L. 15–18–30 (1967) expressly states that no execution shall constitute any lien on personal property until an actual levy upon such property has been made as it provides in full:

> When the officer has made a levy upon any personal property pursuant to the provisions of this code, he shall have a lien thereon for all purposes essential to carrying out the execution, but no execution shall constitute any lien upon personal property until an actual levy upon such property has been made thereunder.

The bank misconstrues S.D.C.L. 15–18–21 (1967) when it insists that this statute prescribes the proper method of levying on a c.d. S.D.C.L. 15–18–21 (1967) merely contemplates the correct procedure for levying on a debtor's judgment.

 No citation is necessary for the proposition that laws on the same subject must be construed in pari materia; that is, with reference to each other. Consequently, the Court has considered the instant case in the light of S.D.C.L. 21–18 (1979) (Garnishment of Debts and Property) and S.D.C.L. 15–18 (1967) (Execution of Judgments). Based on all of the foregoing reasons, the Court concludes that S.D.C.L. 15–18 (1967), specifically 15–18–20 (Supp.1983) and 15–18–30 (1967), determines when a postjudgment garnishment lien is "perfected" against a creditor on a simple contract with a judicial

---

**2.** In any action to recover damages founded upon contract, express or implied, or upon judgment or decree, or at any time after the issuing in any case of an execution against property and before the time when it is returnable, any creditor shall be entitled to proceed by garnishment in any court having jurisdiction of the subject of the action, against any person, including the state and any municipal or public corporation, and including any corporation organized or authorized to be organized by or under the laws of any state or of the United States, which has the power to sue or be sued who shall be indebted to or have any property, real or personal, in his possession or under his control belonging to such creditor's debtor, in the cases, upon the conditions, and in the manner prescribed in this chapter.

lien. Therefore, in the instant case, the bank obtained a perfected interest in the c.d. no earlier than the date it took possession of (levied) the c.d., October 20, 1982. *See McLaughlin v. Alexander,* 2 S.D. 226, 49 N.W. 99 (1891). *See* 11 U.S.C. § 547(e). The earliest the transfer of the c.d. to the bank could have been made is October 20, 1982. *See* 11 U.S.C. § 547(e)(2). Prior to that date, a competing creditor could have obtained a lien on the c.d. by levying on it in accordance with S.D.C.L. 15–18–20.

All that remains to be resolved is the simple matter of calculating the number of days between the time the transfer was made and the date the debtors filed their petition in bankruptcy. Although there is some dispute concerning which date (the date of the transfer or the date the petition is filed) should be excluded, the Court adopts the method which counts the day the transfer was made (here, October 20, 1982) but excludes the day the petition was filed (January 17, 1983) for purposes of computing the ninety-day preference period prescribed by 11 U.S.C. § 547(b)(4)(A). *Harbor Nat. Bank of Boston v. Sid Kumins, Inc.,* 696 F.2d 9, 10 (1st Cir.1982); *In re Mailbag Intern., Inc., supra* at 907–10. Applying this method, the Court concludes that the transfer was made eighty-nine (89) days before the petition in bankruptcy was filed and, therefore, the transfer occurred within the ninety (90)-day period prescribed by 11 U.S.C. § 547(b)(4)(A).

Accordingly, the Court having already concluded that the other four elements of a preferential transfer have been met, the transfer of the c.d. to the bank is a preferential transfer under 11 U.S.C. § 547 and is avoided by the trustee pursuant to that section. The bank shall remit to the trustee the c.d. or its equivalent value in cash and any interest that has accrued on the principle amount in its favor whether before or subsequent to the date it obtained possession of the instrument.

The above constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankruptcy Rule of Procedure 7052 and Federal Rule of Procedure 52. The trustee is directed to submit an order and judgment consistent with the Court's Findings and Conclusions in accordance with Bankruptcy Rule of Procedure 9021. The order and judgment must be submitted no later than December 22, 1983.

DATED at Sioux Falls, South Dakota, this 12th day of December, 1983.