**In re Daryl Keith HOGG and Donna Rae Hogg, d/b/a Farmers, Debtors.**

and

**In re NORWEST BANK SOUTH DAKOTA, N.A., Plaintiff,**

v.

**Daryl Keith HOGG and Donna Rae Hogg, Defendants and Third-Party Plaintiffs,**

v.

**FARMERS HOME ADMINISTRATION, Third-Party Defendant.**

Bankruptcy No. 386–00062.
Adv. No. 386–0009.

United States Bankruptcy Court,
D. South Dakota.

July 24, 1987.

James A. Wyly, Richardson, Groseclose, Kornmann & Wyly, Aberdeen, S.D., for Norwest Bank South Dakota, N.A.

Max A. Gors, Gors, Braun and Zastrow, Pierre, S.D., for debtors.

Robert J. Haar, Asst. U.S. Atty., Sioux Falls, S.D., for Farmers Home Admin.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

## INTRODUCTION

Several matters are before the Court. Included are: 1) objection to proof of claim filed on behalf of Daryl and Donna Hogg ("debtors") by Attorney Max A. Gors on September 26, 1986;[1] 2) complaint to determine nature, extent, and validity of liens filed on behalf of Norwest Bank South Dakota, N.A. ("bank"), by Attorney James A. Wyly on August 19, 1986. In their responsive pleadings, among other things, debtors allege that there is a "preference" under Bankruptcy Code Section 547; and 3) objection to exemptions filed on behalf of the bank by Attorney Wyly on August 12, 1986. These matters were heard in Pierre, South Dakota, on March 4, 1987. After reviewing the pleadings and file, the material facts are these.

## BACKGROUND

Debtors filed for relief under Chapter 11 of the Bankruptcy Code on July 31, 1986. They operate a farming business in Faulk County, South Dakota.

Beginning in 1971, the bank (then known as First National Bank) provided debtors with a line of farm operating credit. In the course of this, in return for a $335,000 line of credit from the bank, debtors executed a promissory note in like amount, a security agreement, and a life insurance policy interest assignment on April 21, 1982. The security agreement covered "all livestock, machinery, tools, equipment, and all farm products whether now owned or hereafter acquired including but not limited to livestock, feed, supplies used to produce in farming operations, contract rights, and accounts" and was properly perfected. Under the life insurance assignment agreement, debtors assigned to the bank "all claims, options, privileges, rights, title and interest" in a Guardsman life insurance policy—a life insurance policy taken out on one of the debtors.

Farmers Home Administration ("FmHA") loaned the debtors $400,000 in June, 1982. This was to be used by the debtors for certain purposes other than paying the bank on their operating line debt. Nevertheless, the debtors placed these monies in their general farm account and paid approximately $300,000 on their bank debt. When the bank, however, learned that Daryl's (one of the debtor's) representation as to the availability of these monies for debt application was untrue, it rescinded payment on the note and complied with FmHA's demand for return of the funds. A detailed account of this is set forth in *Hogg v. First Nat. Bank of Aberdeen*, 386 N.W.2d 921 (S.D.1986), and is made part of this record.

Debtors commenced a state court lawsuit against the bank on June 8, 1983. Among other things, debtors, alleging breach of contract, negligence, and conversion, requested over six million dollars in damages. Along with an answer denying these allegations, the bank counterclaimed for the

---

1. Debtors object to the bank's claim pursuant to Bankruptcy Code Section 502.

amount of principal and interest due on its secured note (as allowed by the security agreement). At the time of the trial, the amount claimed due and owing by the bank was $468,556.79.

A jury trial was held on their respective claims in January, 1985. This resulted in findings for the bank on the debtors' claims and findings for the bank on the counterclaim. The jury, however, assessed the bank's recovery at $375,000 instead of $468,556.79. Bank moved the trial court to increase the jury award on three separate grounds, but the motions were denied.

Between the time of the commencement of the lawsuit and trial, a receiver was appointed to manage the debtors' assets. Under state court order, the receiver sold certain of the debtors' assets and, with the debtors' approval, paid $354,087.13 to the bank on the debt. In his report to the court, the receiver noted that he had paid "interest payments, in the amount of $138,-721.71, plus payment toward principal in the total amount of $215,365.36 for total payments to the defendant bank in the amount of $354,087.07."

On March 7, 1985, Daryl met with bank officials to discuss certain matters. Their discussion centered on the resolution of the state supreme court appeal which each party was then contemplating. While Daryl was unable to remember any details, bank officer, Lyle Paschke, testified that he offered that the bank would not appeal the denial of an additional $93,556.79 in exchange for the debtors' not appealing. No agreement was reached.

Three weeks later, on March 21, 1985, debtors appealed their trial court loss to the South Dakota Supreme Court.

On March 25, 1985, Daryl tendered to the bank a check in the amount of $14,886.02, which included, in the lower left-hand corner "memo" space, the notation, "payment in full to $375,000." This represents the difference in monies received by the bank from the state court receiver and recovery determined by the jury on its counterclaim. Daryl contends that he gave the check directly to Lyle Paschke and told him that this was payment in full on the judgment

against him. Mr. Paschke, however, denies that any discussion took place and insists that Daryl gave the check to his secretary.

Three days later, on March 28, 1985, the bank appealed the trial court's denial of its motion for increase on recovery for amount actually due and owing on its note.

The South Dakota Supreme Court, after considering written and oral arguments, issued its decision on May 14, 1986 (67 days prior to petition filing). *See Hogg v. First Nat. Bank of Aberdeen,* 386 N.W.2d 921 (S.D.1986). The court affirmed the lower court's finding for the bank on the debtors' claim but modified that court's finding on the bank's counterclaim. It specifically held that the lower court erred in not granting the bank's post-verdict motions to raise the award of damages, thereby increasing the bank's recovery $93,556.79 for a total recovery of $468,556.79 (amount bank requested). Underlying this was the finding that "[t]here is no logical explanation to find for the bank on all issues and then only award partial interest as was done by this jury." 386 N.W.2d at 927.

On July 11, 1986, the bank levied on the debtors' farm machinery for the remaining $93,556.79 plus interest (20 days prior to petition filing). The machinery, however, was not sold prior to time of petition filing. (*See In re Davis,* 40 B.R. 934 (Bankr.D.S.D. 1984), for an explanation of what is property of the estate in this circumstance.) On August 13, 1986, the bank filed its proof of claim in the amount of $97,576.52 (the Court assumes that the additional $4,019.73 is interest calculated on $93,556.79).

According to their B-4 schedules, the debtors claimed exempt, among other things, certain life insurance policies valued at $52,000, pursuant to S.D.C.L. §§ 43-45-6 and 58-12-4, and food and fuel provisions for one year valued at $5,000 (actually claimed cash in that amount), pursuant to S.D.C.L. § 43-45-2(6). At the March 4 hearing, debtors reduced their life insurance exemption claim to $20,000.

Among others, depositions of Philip Kneifl, who was the debtors' attorney during the state court matters (trial and appel-

late level), Daryl Hogg, and Lyle Paschke were taken prior to the March 4 hearing and made part of the record. Of particular interest is Attorney Kneifl's comment that he had many conversations with Daryl throughout the appeal and at no time did Daryl indicate to him "in any way, shape or form that he had reached a settlement with the bank, by virtue of this March 25, 1985, payment." Depositions of Daryl and Lyle coincide their testimony presented at the hearing.

## ISSUES

The principal issues raised are as follows:

1) Whether the doctrine of res judicata precludes a bankruptcy court from considering new defenses by a debtor to a creditor's proof of claim, which claim is based on a prior state court's judgment for amount due and owing on a secured promissory note, when that matter was otherwise fully and fairly litigated in state court and exceptions to discharge under Bankruptcy Code Section 523(a) are not at issue;

2) Whether there is a preferential transfer under Bankruptcy Code Section 547(b) when, within ninety days of filing, a state appellate court, in correcting a lower court's error on the amount due and owing a perfected secured creditor on its note, increases the amount of recovery on the note and that creditor therefrom levies on assets secured to it;

3) Whether a debtor may properly claim the $20,000 cash value of a life insurance policy exempt under S.D.C.L. § 58-12-4 when the debtor, by written agreement, assigned all of his interest to a creditor as part of security for a loan (operating line of credit); and

4) Whether a debtor may properly claim $5,000 in cash as exempt as either "provisions" or "fuel" under S.D.C.L. § 43-45-2(6).

## LAW

### *First Issue*

As to the first issue, the Court holds that the doctrine of res judicata precludes a bankruptcy court from considering new defenses by a debtor to a creditor's proof of claim, which claim is based on a prior state court's judgment for amount due and owing on a secured promissory note, when that matter was otherwise fully and fairly litigated in state court and exceptions to discharge under Bankruptcy Code Section 523(a) are not at issue. This is based on the following discussion.

On a plethora of arguments (defenses), none of which were raised at the state trial court level, debtors insist that the bank was paid in full and, therefore, is not entitled to its $97,576.52 claim. Arguments advanced include: 1) bank's acceptance of the March 25, 1985, check in the amount of $14,886.02, with the notation, "payment in full to $375,000," constitutes an "accord and satisfaction" and, therefore, the bank waived any rights to collect more money; and 2) bank's suit on the note (as against foreclosure on its security) and judgment recovery of $375,000 constitute a "payment in full" on three grounds: (a) when bank obtained its judgment, the note merged into the judgment, thereby extinguishing the original indebtedness of $468,556.79 and replacing it with the new debt represented by the judgment, that of $375,000—the result is that the bank was paid in full when it received the $14,886.02; (b) when bank received $14,886.02, debtors fully performed their obligation and, pursuant to S.D.C.L. § 20-4-1, bank was paid in full; and (c) when bank received $14,886.02, it had accepted the "whole principal of the judgment" ($375,000) and waived any further right to interest pursuant to S.D.C.L. § 21-1-12, which reads, "Accepting payment of whole principal, as such, waives all claim to interest." At the outset, the bank conversely contends that the doctrine of res judicata precludes a bankruptcy court from considering new defenses by a debtor to a creditor's proof of claim, which claim is based on a prior state court's judgment for amount due and owing on a secured promissory note (extent of debt), when that matter was otherwise fully and fairly litigated in state court in which these defenses could

have been raised and exceptions to discharge under Bankruptcy Code Section 523(a) are not at issue. Alternatively, the bank resists debtors' arguments on the following grounds: 1) that pursuant to S.D. C.L. § 57A–9–501(1), the receipt of the state court judgment on its secured note does not terminate any other rights; and 2) the payment on the state court judgment did not constitute payment in full.

 Res judicata is "claim preclusion," which forecloses litigation of matters which may have not been litigated. *In re Weitzel,* 72 B.R. 253, 256 (Bankr.N.D.Ohio 1987). Stated another way, under this doctrine, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Oglala Sioux Tribe v. Home Stake Min. Co.,* 722 F.2d 1407, 1409 (8th Cir.1983), *citing Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). Defenses which could have been raised are included. *Shaw v. Cal. Dept. of Alcoholic Beverage Control,* 788 F.2d 600, 605 (9th Cir.1986). Claim preclusion, therefore, encompasses the law of merger and bar. *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). This encourages reliance on judicial decisions, bars vexatious litigation, and frees courts from resolving issues which otherwise may have been litigated. *In re Comer,* 723 F.2d 737, 740 (9th Cir. 1984). Bankruptcy courts recognize and apply the basic principles of res judicata in determining the effect to be given in bankruptcy proceedings to judgments rendered in other forums. *Id.* at 739; *In re All American of Ashburn, Inc.,* 56 B.R. 186, 188 (Bankr.N.D.Ga.1986). This is in accordance with the principle of "full faith and credit" set out in 28 U.S.C. § 1738.[2] *Id.*

 Debtors contend that the United States Supreme Court's holding in *Brown*

*v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), precludes application of the doctrine of res judicata in the instant case. *Brown* created an exception to application of this doctrine in holding that bankruptcy courts may look beyond the evidence presented in state courts when deciding whether a debt is excepted from discharge under Bankruptcy Code Section 35, the predecessor to Section 523(a). The specific issue raised in that case was whether a bankruptcy court may consider evidence extrinsic to the judgment and record of a prior state collection suit when determining whether a debt previously reduced to judgment was excepted from discharge under Section [523(a) ]. The state court suit was settled by stipulation, and neither the stipulation nor the resulting judgment indicated the cause of action on which the debtor's liability was based. Brown sought to establish that the debtor's judgment debt to him was excepted from discharge on the grounds that the debt was a product of the debtor's fraud, deceit, and malicious conversion. Debtor, however, argued that the state court proceeding did not result in a finding of fraud and contended that res judicata barred relitigation of the nature of his debt to Brown. The Court refused to allow the principle of res judicata to bar the bankruptcy court from looking beyond the state court judgment to determine whether the debt came within one of the exceptions to discharge. It noted that applying res judicata would force a consolidation of claims in the state court which would "undercut a statutory policy of resolving § 17 questions in bankruptcy court, and would force state courts to decide questions at a stage when they are not directly in issue and neither party has a full incentive to litigate them." 442 U.S. at 134, 99 S.Ct. at 2211. The Court held, in such circumstances, that "neither the interests served by res judicata, the process of orderly adjudication in state courts, nor the policies of the Bankruptcy Act would be well served by foreclosing petitioner from

**2.** 28 U.S.C. § 1738 reads, in part, as follows: Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court

within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

submitting additional evidence to prove his case." *Id.* at 132, 99 S.Ct. at 2210.

Upon review, this Court finds that *Brown* and its progeny do not preclude res judicata doctrine application in the instant case. This is because exceptions to discharge are not at issue, but only the amount due and owing on a secured note.

The Ninth Circuit Court of Appeals' holding in *In re Comer*, 723 F.2d 737 (9th Cir.1984), clearly supports this Court's conclusion. In *Comer*, the debtor's ex-wife obtained, by default, a state court judgment for breach of a marital separation agreement. Next, she obtained a "sister state money judgment" in the state in which the debtor lived. Debtor moved to vacate that judgment on various theories but was denied. He then filed a Chapter 7 bankruptcy petition and a complaint to determine dischargeability of this debt under Section 523(a)(5). Based on his previous arguments made to the state court, the debtor insisted that the bankruptcy court should *invalidate the judgment.*

After carefully reviewing *Brown*, the Ninth Circuit first observed:

Res judicata should not be applied to bar a claim by a party in bankruptcy proceedings, nor should a bankruptcy judge rely solely on state court judgments when determining the nature of a debt for purposes of dischargeability, if doing so would prohibit the bankruptcy court from exercising its exclusive jurisdiction to determine dischargeability. In the present case, applying *res judicata* to bar the bankruptcy court from looking behind the default judgment to determine the actual amount of the obligation would not preclude the exercise of the bankruptcy court's exclusive jurisdiction to determine the nature of the subject debt for purposes of dischargeability.

Then determined:

The evidence [debtor] sought to have admitted attacked the *extent* of his obligation to [his ex-wife], not the *nature* of that debt, and was thus irrelevent to the bankruptcy court's determination of dischargeability....

Applying *res judicata* to bar [debtor's] evidence does not fall within the *Brown* exception barring the application of *res judicata*, since that evidence had no relevancy to the bankruptcy court's determination of the nature of the debt. Failing to apply *res judicata* under these circumstances would allow a [debtor] who has had full incentive to litigate, and who has fully litigated, an issue in state court—an issue which has no relevancy to the nature of a debt for purposes of dischargeability—to have that same issue relitigated in the bankruptcy courts. The application of *res judicata* in a case such as this would not hinder the bankruptcy judge from determining dischargeability, but instead would stimulate vexatious litigation.

*Id.* at 740.

For cases in which bankruptcy courts looked beyond the doctrine of res judicata when determining exception to discharge matters under Bankruptcy Code Section 523(a), *see In re Williams*, 703 F.2d 1055 (8th Cir.1983); *In re Neely*, 59 B.R. 189 (Bankr.D.S.D.1986).

In the instant case, debtors seek to raise a plethora of defenses to the bank's $97,576.52 proof of claim, which claim is based on a prior state court's judgment for amount due on a secured promissory note (extent of debt), even though the suit for the amount due and owing was otherwise fully and fairly litigated in state court and these defenses could have been raised and argued at that time. Moreover, exceptions to discharge under Bankruptcy Code Section 523(a) are not at issue. Based on the doctrine of res judicata, the Court denies the debtors' objection to the bank's proof of claim of $97,576.52. To hold otherwise would allow all debtors to go to state court (either as a plaintiff or a defendant—or both, as in this case) and file bankruptcy and relitigate the amount they owe to a particular creditor by dreaming up new defenses.

Assuming, arguendo, the doctrine does not apply, the Court finds the debtors' "accord and satisfaction" and various "payment in full" theories without merit.

Among other things, no agreement was reached between the parties with respect to their appeals, no agreement was reached between the parties as to the check constituting payment in full, and payment by the check with the notation, "payment in full to $375,000," does not, as a matter of law, constitute a full payment on the amount due and owing on the note. Moreover, the bank's suit on its note did not terminate any other rights, including its right to thereafter foreclose on its security.

■ Uniform Commercial Code Section 9–501(1) reads, in part, as follows:

When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this chapter ... He may reduce his claim to judgment, foreclose, or otherwise enforce the security interest by any available judicial procedure ... The rights and remedies referred to in this subsection are cumulative.

S.D.C.L. § 57A–9–501(1).

What this means is that a party may choose to sue on its note or foreclose on its security, or both, but may not do so simultaneously. *Baldwin v. First Nat. Bank of Black Hills*, 362 N.W.2d 85, 89 (S.D.1985).[3] Finally, acceptance of payment by the bank on the underlying debt does not constitute a waiver or abandonment of any other rights or remedies. *State Bank, Etc. v.*

*All American Sub, Inc.*, 289 N.W.2d 772, 775 (N.D.1980); *Gorham v. Denha*, 77 Mich.App. 264, 258 N.W.2d 196, 200 n. 3 (1977).

### *Second Issue*

As to this issue, the Court holds there is no preferential transfer under Bankruptcy Code Section 547(b) when, within ninety days of filing, a state appellate court, in correcting a lower court's error on the amount due and owing a perfected secured creditor on its note, increases the amount of recovery on the note and that creditor therefrom levies on assets secured to it. This is based on the following discussion.

■ A voidable preference under Bankruptcy Code Section 547(b) exists if all the following elements are established: [4]

(1) There is a "transfer" of the debtor's property;

(2) To or for the benefit of a creditor;

(3) For or on account of an antecedent debt owed by the debtor before such transfer was made;

(4) Made while the debtor was insolvent; [5]

(5) Made on or within 90 days before the date of filing the petition (one year if insider); [6] and

(6) The transfer enables the creditor to receive more than if the case were a

3. For example, if a secured party forecloses and sells the secured collateral and a deficiency remains, unless otherwise agreed, the debtor is liable for the deficiency. S.D.C.L. § 57A–9–504(2).

4. Bankruptcy Code Section 547(b) reads as follows:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

5. For purposes of Section 547, a debtor is presumed to have been insolvent on and during the ninety days immediately preceding the date of filing of the petition. 11 U.S.C. § 547(f). This presumption may be rebutted if the creditor shows that the debtor's assets were greater than its liabilities. *In re Jespersen*, 67 B.R. 415, 416 n. 2 (Bankr.D.S.D.1986).

6. In determining this ninety-day period, the Court counts the day which the transfer is made but excludes the day the petition was filed. *In re Jespersen, supra,* at 416 n. 3.

liquidation case, the transfer had not been made, and the claims were allowed or disallowed according to the Bankruptcy Code.

11 U.S.C. § 547(b).

*See also In re Jespersen,* 67 B.R. 415 (Bankr.D.S.D.1986); *In re Hogg,* 35 B.R. 292, 294 (Bankr.D.S.D.1983). Debtors, as debtors-in-possession,[7] have the burden of proving each element by a preponderance of the evidence. 11 U.S.C. § 547(g); *In re Hogg,* 35 B.R. at 294.

Debtors essentially contend that the state appellate court's correcting the trial court's error on the amount due and owing the bank on its secured note, resulting in an increase in allowed amount of recovery ($93,556.79) and the bank's levy on the debtors' farm machinery both within ninety days prior to filing, constitutes a preference under Bankruptcy Code Section 547(b). Their position is that when the bank sued on the note and received a $375,-000 judgment, which amount was then paid in full by the receiver and debtors, the bank's interest was terminated (merged into the judgment). Thus, the $93,556.79 increase in the allowed amount of recovery by the appellate court constitutes a new unsecured debt which was the basis of the bank's levy on the debtors' farm machinery.

Conversely, the bank insists that the appellate court's correcting the lower court's error on the amount due and owing on its secured note and subsequent levy on the farm machinery, in which it otherwise had a perfected security interest, do not constitute a preferential transfer under Bankruptcy Code Section 547(b). Its position is: 1) that pursuant to S.D.C.L. § 57A–9–501(1), the receipt of a state court judgment on its secured note does not terminate any other rights and remedies, including foreclosure on its security interest; 2) the payment on the state court judgment by the receiver and debtors did not constitute payment in full; 3) the appellate court's correcting a lower court's error on the amount due and owing the bank on its secured note on the date of the trial judg-

ment was not a "transfer" of property; 4) that pursuant to S.D.C.L. § 57A–9–501(5), the levy on the debtors' farm machinery, in which it otherwise had a perfected security interest, relates back to the 1982 perfection date and, therefore, there was no transfer of property within ninety days of filing; and 5) even if the levy on the farm machinery is technically a "transfer" of property for preference purposes, the bank still did not receive more than it would have in a Chapter 7 because it otherwise had a perfected security interest in the debtors' farm machinery on the date of petition filing under South Dakota law, S.D.C.L. § 57A–9–403(2).

■ At the outset, the Court holds that the appellate court's correcting of a lower court's error within ninety days of filing in the amount due and owing a creditor (bank) on its secured note, resulting in an increase in allowed amount of recovery, does not itself constitute a "transfer" of property for preference purposes under Section 547. The appellate court in the instant case only determined what was actually due and owing the bank on the trial date, which was almost two years prior to filing. The appellate decision just happened to be issued within ninety days prior to filing. As to the debtors' "accord and satisfaction" and various "payment in full" theories, this Court has previously found these arguments without merit. Having determined this, the Court must now resolve the farm-machinery-levy-within-ninety-days-of-filing question.

Bank insists that its July 11, 1986, levy on the debtors' farm machinery, arising from the $93,556.79 appellate court's modification (twenty days before filing), was not a transfer for preference purposes. This is because, under South Dakota law, its levy on the farm machinery relates back to the original date of perfection. Citing *Matter of Claxton,* 32 B.R. 215 (Bankr.E.D.Va.1983); *In re Ressler,* 61 B.R. 403 (Bankr.E.D.Tenn.1986); *In re Wegner,* 61 B.R. 414 (Bankr.D.Mont.1986), as support,

---

**7.** A debtor-in-possession has the rights of a trust- ee. 11 U.S.C. § 1107.

the debtors contend that this constitutes a "transfer" of property.

█ State law determines when a transfer is "perfected." *In re Hogg*, 35 B.R. at 295; 4 *Collier on Bankruptcy* ¶ 547.16[2] (15th ed. 1987). Federal law determines when the transfer is "made." *Id.*

Uniform Commercial Code Section 9–501(5) reads, in part, as follows:

"When a secured party has reduced his claim to judgment the lien of any levy which may be made upon his collateral by virtue of any execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral."

S.D.C.L. § 57A–9–501.

An official comment to this section explains this provision as follows:

Under [U.C.C. § 9–505(1)] a secured party is entitled to reduce his claim to judgment or to foreclose his interest by any available procedure, outside this Article, which state law may provide. The first sentence of subsection (5) makes clear that any judgment lien which the secured party may acquire against the collateral is, so to say, a continuation of his original interest (if perfected) and not the acquisition of a new interest or a transfer of property to satisfy an antecedent debt. The judgment lien is therefore stated to relate back to the date of perfection of the security interest.

Comment 6 to U.C.C. § 9–501.

█ In *In re Schindler*, 16 U.C.C.Rep. 252 (Bankr.E.D.Pa.1974), Judge Goldhaber, applying the relation back doctrine under U.C.C. § 9–501(5) in a factual setting materially similar to the instant case (original perfection date was three years prior to filing), held that there was no preferential transfer under Section 67 of the Bankruptcy Act (predecessor to present Section 547). For a state court's application of this doctrine, *see Rural Gas, Inc. v. Shepak*, 205 Kan. 397, 469 P.2d 341 (1970). *See also* 9 *Anderson on Uniform Commercial Code* § 9–504:14 (3d ed. 1986).

Consistent with the *Schindler* court's analysis, Professor Barkley Clark, a noted authority, states:

[F]oreclosure by execution is not subject to attack by a trustee in bankruptcy as a judgment lien voidable to the extent it arises shortly before bankruptcy. This is because § 9–501(5) treats an execution as foreclosure of the original security interest under Article 9 (not as acquisition of a new interest), with relation back to the time when the security interest was originally perfected ... In other words, if the secured party chooses not to enforce the security interest under Article 9, the trustee cannot treat him as an unsecured creditor with respect to the collateral. (footnotes omitted)

Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 4.3(2) (1980).

Debtors' reliance on *Claxton, Ressler,* and *Wegner* for the proposition that there is a "transfer" of property for preference purposes when a party *who has an already properly perfected security interest in the debtor's assets* receives a judgment on its note and within ninety days of filing levies on certain of those assets is misplaced. Those cases involved an unsecured creditor, not a perfected secured creditor, who received a judgment lien within ninety days of filing and, therefore, are materially distinguishable from the instant case. 4 *Collier on Bankruptcy* ¶ 547.03 (15th ed. 1987). *See also In re Hogg*, 35 B.R. 292 (Bankr.D.S.D.1983).

Based on the foregoing, the Court finds that the bank's perfection by levy on the farm machinery relates back to 1982, the original date of the perfection, and, therefore, holds that there was not transfer of property for preference purposes within ninety days of filing.

█ Alternatively, the bank contends that even if the levy on the farm machinery is technically a "transfer" of property for preference purposes, it still did not receive more than it would have in a Chapter 7. This is because, under South Dakota law, S.D.C.L. § 57A–9–403(2), it was otherwise

perfected as to the farm machinery on the date of petition filing.

Uniform Commercial Code Section 9–403(2) reads, in part, as follows:

> [I]f a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of sixty days or until expiration of the five year and sixty day period, which ever occurs later.

S.D.C.L. § 57A–9–403(2).

The Court agrees with the bank's position. *See* 4 *Collier on Bankruptcy* ¶ 547.08 (15th ed. 1987).

Based on the foregoing, the Court holds that the debtors have failed to prove that there was a preferential transfer under Bankruptcy Code Section 547(b). (As to the $4,019.73 in interest, debtors did not show that bank received more during the ninety days preceding bankruptcy than it would have in a Chapter 7.) The Court, therefore, finds that the bank has a valid claim in the amount of $97,576.52.

### Third Issue

■ As to the third issue, the Court holds that a debtor may not properly claim the $20,000 value of a life insurance policy exempt under S.D.C.L. § 58–12–4 when the debtor, by written agreement, assigned all of his interest to a creditor as part of security for a loan. This is based on the following discussion.

At the outset, the Court notes that S.D.C.L. § 58–12–4, and not Section 43–45–6, is determinative in ascertaining the amount of allowed exemption with respect to life insurance policies. *In re James*, 31 B.R. 67, 69–70 (Bankr.D.S.D.1983). Under Section 58–12–4, a debtor may properly exempt a life insurance policy having up to $20,000 in cash value "in the absence of any agreement or assignment to the contrary." In the instant case, debtors, by written agreement, assigned all of their interest, rights, and privileges in the Guardsman life insurance policy to the bank for additional security for their oper-

ating line of credit and, therefore, may not claim it exempt under Section 58 to defeat the rights of the perfected secured creditor bank.

### Fourth Issue

■ As to the fourth issue, the Court holds that the debtors may not properly claim $5,000 in cash as exempt under S.D.C.L. § 43–45–2(6) because cash is neither "provisions" nor "fuel" within the meaning of that statute.

Under S.D.C.L. § 43–45–2(6), a debtor may claim as exempt, among other things, fuel and provisions necessary for one year. It reads as follows:

> "[T]his property ... is absolutely exempt from all such process, levy, or sale, except as otherwise provided by law:
>
> . . . .
>
> '(6) The provisions for the debtor and his family necessary for one year's supply, either provided or growing, or both, and fuel necessary for one year."

S.D.C.L. § 43–45–2(6).

The statute's language clearly suggests that the debtor must have these provisions and/or fuel in hand and not just cash with the intent to purchase fuel and provisions. Appropriate prebankruptcy estate planning suggests that the debtors should have "provisioned" themselves prior to filing.

Accordingly, the above and foregoing hereby constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matters pursuant to Bankr.R.P. 7052 and 9014 and Fed.R.Civ.P. 52. Counsel for the bank is directed to submit an appropriate order and judgment in accordance with Bankr.R.P. 9021 for each of the three issues resolved herein.