OaeutheRS, J.,
delivered the opinion of the Court.
This case raises a question upon the application of the doctrine of lis pendens in a shape in which it has not before perhaps been presented to our Courts. It comes up upon demurrer to the hill. The facts set forth in the hill are these: Joshua Shelton, of Virginia, by his will, left the slaves from which those in controversy descended to his wife Polly Shelton for life, and then to the complainants. In 1819, they filed their hill in the Chancery Court at Lynchburg, Virginia, against the widow and Bell and Woodruff, upon the ground that they had conspired to defeat the remainder, and to have the same made secure by bond for the forthcoming of the slaves at the termination of the life-estate. The security was given under an order of the Court by Bell, but his sureties became insolvent, and he removed with the slaves to Tennessee in 1820. The defendants hold said slaves as purchasers from Bell or his vendees, either mediate or immediate. By a decree of 24th June, 1853, the rights of the parties were adjudicated and settled in that suit; and the case still continuing on the docket, an order was made in 1856 that Ralph Shelton and another should pursue the slaves, and, if necessary, bring suit for them. In pursuance of that authority, this bill was filed on the 28th July, 1856. Polly Shelton died in 1850.
It is further charged in the bill that said Bell claimed the negroes as his own in Tennessee from 1820 *679 to about 1838, when he conveyed those now sued for to Eerrell to defraud his creditors. He sold Matilda and her children to Johnson, who died, and they were bought at the public sale of the property by defendant Alford, who now holds and claims them. In 1844, said Jonathan Bell sold Wesley, another one of the slaves, to David A. Bell, his son, to defraud his creditors, and he,' in the same year, sold him to Robards, and he to the defendant Bailey Johnson.
Eor these slaves this bill is filed against Alford, Johnson, and David A. Bell. The defendants demur, upon the ground that, by the showing of the bill, they are protected by the statute of limitations. In answer to this, the complainants contend that the defence cannot be allowed, because of the pendency of their suit in Virginia for these slaves from the year 1819 until the present time, and that by the doctrine of lis pendens no valid right could be acquired to these slaves to which they claimed title in their suit finder any of the defendants in the same. The Chancellor sustained the demurrer, upon the ground, as he states in his decree, “that the pendency of the litigation in the State of Virginia, mentioned in the bill, was no notice to the defendants of complainant’s rights, nor of such litigation, and consequently that the complainants’ claim to the negroes in controversy has been long since barred by the statute of limitations.”
Without stopping to inquire for the present whether there are no other grounds upon which the decree could be maintained besides that on which the Chancellor places it, we will briefly examine that. The argument here is confined to that point, and if that is with the defendants it is certainly decisive of the case, without reference to *680 other grounds that might probably, in reference to the statute of limitations, be assumed.
Then, if the pendency of a suit in the Courts of this State for personal property would prevent the operation of the statute in favor of one claiming adversely upon a title and possession commencing during the pendency of the suit, which question need not now be considered, would a suit in another State have the same effect? or, in other -words, does the doctrine of Us pendens have estra-territorial application? •
The rule on this subject is, that any interest acquired in the subject-matter of a suit while it is pending will be regarded as a nullity as to the plaintiff’s title, which may be established by a judgment or decree in the suit.
The rule is generally placed on the ground of notice either actual or constructive. The law presumes that “judicial proceedings during their continuance,” says Adams in his work on Equity Jurisprudence, at page 157, “are publicly known throughout the realm.” In note 1 on the same page it is laid down that “the whole world — that is, all men in that jurisdiction or State — are warned that they meddle at their peril with the property sued for, and specifically pointed out, in such judicial proceedings.” Such is there said to be the principle of lis pendens. This rule is founded more upon the necessity for it, to give effect to the proceedings of Courts, than upon any presumption of notice. Without such a principle, all suits for specific property might be rendered abortive,, by successive alienations of the property in suit; so that at the end of one suit, another would have to be commenced; after that, another, by which it would be rendered almost *681 impracticable for a man ever to make bis rights available by a resort to the Courts of justice. Whether this rule is founded on the idea of notice, or is a positive, arbitrary rule, suggested and sanctioned by policy or necessity, there is certainly no principle more essential to the administra'tion of justice than the doctrine of Us pendens, though attended with occasional hardships. But if extended beyond its proper limits, it would become unjust and pernicious. This whole doctrine is very fully examined in French vs. Loyal Company, 5 Leigh, 646-681; 2 Rand., 102; and Leading Cases in Equity, part 9, vol. ii., 158.
But the question here is not so much what the doctrine is, as the extent of its application. A very able and ingenious argument is made in this case to prove that the same effect must be given to the pendency of a suit in this respect in all the States of this Union that it has in the local forum.
We are referred to Article 4, § 1, of the Constitution of the United States to establish this position. “Full faith and credit shall be given in each State to ^the public acts, records, and judicial proceedings of every other State.” It is argued that the suit in Virginia was a “judicial proceeding,” and that as its effect, under the doctrine of Us pendens, would there be to avoid all cotemporary sales of the property, the same effect must be given to it in this State.
By the next clause, Congress is required to prescribe by general laws the manner in which such “records and judicial proceedings shall be proved, and the effect thereof.” This provision has never been held to authorize the issuance of final process to execute decrees and judgments of another State. It only recognizes the rights *682 of parties as settled according to such record, and becomes the foundation of an action in any other State in the place of the original cause, and closes all investigation of the merits, where it appears the Court from which the record comes had jurisdiction of the parties, with some few excepted cases. This is what is meant by giving “full faith and credit.” It does not mean that all the effects and consequences of a litigation in one State shall follow it to another.
The principle of Us pendens is, as we have seen, to prevent any obstruction being thrown in the way of the execution of a judgment after it has been pronounced at the end of a litigation in the Courts, by intervening rights acquired to the thing sued for. Nights so acquired will not be permitted to frustrate the objects of a suit in Court, but will be passed over as if they had never existed. But the judgments of sister States cannot be executed here by process, and therefore the reason of the rule does not apply. There is no recognized comity between the States that would require such an effect to be given to judicial proceedings, of „which we are aware.
It is a very strong and forced presumption to make, in most cases, within the same State, that all its citizens have knowledge or notice of all the suits that may be pending in all the Courts of record in the State. But though we know it is the presumption of an impossibility, yet the urgent policy of the rule has forced its adoption. But it would be an absurd and unreasonable extension of it to make it apply to every Court in the Union. This would shock the common sense of mankind, and bring odium upon the whole doctrine. The phrase thrown out in the books, in laying down the rule that *683 “ Us pendens is notice to all the world,” must he limited in its construction to all persons within the jurisdiction or State where the suit was pending. It cannot he carried further upon correct principles or reason, and there is no authority on the question to control us.
The result is that the decree of the Chancellor is correct, and must he affirmed.