In the Matter of Robert Jones ADAMS and Jean Adams, individually and d/b/a Adams Boarding Home, Debtors,

Sam J. McALLESTER, III, Trustee, Plaintiff,

v.

Jean ADAMS, Michael J. Poling, and wife, Teresa L. Poling, Randell W. Adams and wife, Victoria Adams, Defendants.

Bankruptcy No. 182–00502.
Adv. No. 183–0454.

United States Bankruptcy Court,
M.D. Tennessee.

Dec. 19, 1983.

Frank K. Dale, Columbia, Tenn., for defendants.

Jerry Roberson, Columbia, Tenn., for debtor.

Sam J. McAllester, for trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE C. PAINE II, Bankruptcy Judge.

This cause came on to be heard on December 14, 1983, before the Honorable George C. Paine, II, Judge upon the Complaint of the Trustee, Answer of the Defendants, Motion for Summary Judgment and Brief filed on behalf of the Trustee, Motion for Summary Judgment and Brief filed on behalf of Michael J. Poling and Teresa L. Poling, Stipulation of Facts, argument of counsel and from the entire record, from all of which the court finds that there are no questions of fact and that there is a proper proceeding for Summary Judgment; that the *lis pendens* filed by the Defendants, Michael J. Poling and wife, Teresa L. Poling, on May 20, 1981, of record in Book 8, page 589, Register's Office for Maury County, Tennessee, was not filed upon property that was subject to the Complaint filed in the Chancery Court for Maury County, Tennessee, and, therefore, was not a valid and proper lien *lis pendens* under the laws of the State of Tennessee against the real estate of the Debtors and that the Trustee's interest, pursuant to 11 U.S.C. § 544, is superior to the rights or interests of the improper and invalid lien *lis pendens* of Michael J. Poling and Teresa L. Poling.

The following shall constitute Findings of Fact and Conclusions of Law as required by Rule 7052 of the Bankruptcy Rules of Procedure:

Robert Jones Adams, a/k/a Mike Adams, and Jean Adams filed a voluntary Chapter 7 petition in bankruptcy in the United States Bankruptcy Court for the Middle District of Tennessee on or about February 19, 1982.

One of the assets listed by the Debtors was a five-acre tract of real property located in Maury County, Tennessee. Said real property was acquired by Mike Adams and wife, Jean Adams, by a Deed, of record in Book 625, page 691, Register's Office for Maury County, Tennessee. Mike Adams and Robert Jones Adams are one and the same person.

Sam J. McAllester, III is the duly appointed and presently acting Trustee for the Debtors, Robert Jones Adams and Jean Adams. Robert Jones Adams, a/k/a Mike Adams, is now deceased.

Michael J. Poling and wife, Teresa L. Poling, filed a Complaint in the Chancery Court for Maury County, Tennessee, on May 20, 1981, Docket No. 81–233, styled *Michael J. Poling and wife, Teresa L. Poling v. Mike Adams and wife, Jean Adams,* seeking a judgment for the Plaintiffs in the total amount of $4,182.04. Said complaint did not seek to fix a lien *lis pendens* on any real estate and did not describe the five acre tract of real property of the Debtors.

The unimproved five-acre tract of real property owned by Mike Adams and Jean Adams is not the subject matter of the Complaint filed in the Chancery Court for Maury County, Tennessee. The Chancery Court Complaint involves a sales contract on a house and lot in Columbia, Tennessee, completely unrelated to the five acre tract.

Simultaneously with the filing of the Complaint in the Chancery Court for Maury County, Tennessee, Frank K. Dale, attorney for Michael J. Poling and wife, Teresa L. Poling, executed a *lis pendens* against the five-acre tract of real property owned by Mike Adams and wife, Jean Adams. Said *lis pendens* was filed for record on May 20, 1981, of record in Book 8, page 589, Register's Office for Maury County, Tennessee.

A Judgment on the complaint of the Plaintiffs Michael J. Poling and Teresa L. Poling against the Debtors was entered in the Chancery Court for Maury County, Tennessee, on January 8, 1982 by the Honorable Robert L. Jones, Circuit Judge. A copy of said Judgment was filed for record with the Register of Deeds for Maury County, Tennessee, on January 11, 1982, of record in Lien Book 8, page 780, said Register's Office. Said judgment does not describe the five acre tract nor does the judgment seek to fix a lien upon the five acre tract.

The recording of the Chancery Court Judgment with the Register of Deeds for Maury County, Tennessee, on January 11, 1982 was a preference as defined by 11 U.S.C. § 547(b).

The parties to the adversary proceeding stipulated that the issue to be resolved is whether the use of a lien *lis pendens* to establish a lien on certain real property which is not the subject matter of the lawsuit is a valid and proper use of a *lis pendens* under the laws of the State of Tennessee and whether such lien *lis pendens* is superior to the title and interest of the Trustee under 11 U.S.C. § 544.

## COMMON LAW OF *LIS PENDENS*

Resolution of this case requires a clear understanding of the doctrine of *lis pendens*. Most of the litigation cited herein revolves around the question of whether a lien *lis pendens* provides "notice to all the world." As will be shown, its purpose is not so much to give notice as to restrict third party rights. *The true purpose for liens lis pendens is to prevent third parties from meddling with property in litigation before the court.* In the opinion of *French v. The Loyal Company,* 5 Leigh 646–648, 32 Va.R. 627 (1834), are found the following passages showing the doctrine's true function at a time when our country's common law was relatively pure.

The rule as to the effect of a *lis pendens*, is founded upon the necessity of such a rule, to give effect to the proceedings of courts of justice. Without it, the administration of justice might, in all cases, be frustrated by successive alienations of the property, which was the object of litigation, pending the suit, so that every judgment and decree would be rendered abortive, where the recovery of specific property was the object.

*Id.*, at 681.

The *French* court noted the doctrine's effects as used in England:

In *Gaskell v. Durdin*, 2 Ball & Beat. 169, the lord chancellor says,—"The rule of this court undoubtedly is, that any interest acquired in the subject matter of a suit, pending the suit, is so far considered a nullity, that it cannot avail against the plaintiff's title."

*Id.*, at 646.

In the *French* case, the survivors of the Loyal Company brought suit based on the misconduct of some of the company's settlors. They further sought and were granted an injunction to prevent further patents from issuing for land surveyed by the company.

In the present case, there is no foundation for the application of the doctrine of the *lis pendens*. . . . The survey claimed by *Johnston* was not a part of the corpus which constituted the subject of that suit. . . . and I am at a loss to conceive how the lis pendens can apply, where the property purchased is not demanded, and can neither be decreed, nor in any wise affected by the determination of the case.

*Id.*, at 684.

The first considered Tennessee opinion on *lis pendens* appears to be *Shelton v. Johnson*, 36 Tenn. 672 (1857). There the Supreme Court considered whether the doctrine of *lis pendens* provided Tennessee slave purchasers with notice of litigation pending in Virginia concerning claims to the slaves. In the course of the opinion, the Tennessee Supreme Court announced its understanding of the principles of *lis pendens*, citing *French v. The Loyal Company, supra.*

The rule on this subject is, that any interest acquired in the subject-matter of a suit while it is pending will be regarded as a nullity as to the plaintiff's title, which may be established by a judgment or decree in the suit.

The rule is generally placed on the ground of notice either actual or constructive. The law presumes that "judicial proceedings during their continuance," says Adams in his work on Equity Jurisprudence, at page 157, "are publicly known throughout the realm." In note 1 on the same page it is laid down that "the whole world—that is, all men in that jurisdiction or State—are warned that they meddle at their peril with the property sued for, and specifically pointed out, in such judicial proceedings." Such is there said to be the principle of *lis pendens*. This rule is founded more upon the necessity for it, to give effect to the proceedings of Courts, than upon any presumption of notice. Without such a principle, all suits for specific property might be rendered abortive, by successive alienations of the property in suit; so that at the end of one suit, another would have to be commenced; after that, another, by which it would be rendered almost impracticable for a man ever to make his rights available by a resort to the Courts of Justice.

*Shelton v. Johnson, supra,* at 680.

Every subsequent Tennessee appellate court decision to date discussing *lis pendens* involves some underlying claim to the specific property for which the lien is also claimed; eg, *Massachusetts Mutual Life Insurance Co. v. Taylor Implement and Vehicle Co.*, 138 Tenn. 28, 195 S.W. 762 (1917)—no lien *lis pendens* where property sought to be executed against was not described in pleadings on court records. *Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904 (TN.1976)—noting that the phrase "or otherwise" as used in T.C.A. 20–301, now 20–3–101, includes all types of liens *lis pendens*, and not just those enu-

merated in that statute (considered *infra* ). *Moore-Handley, Inc. v. Associates Capital Corp.*, 576 S.W.2d 354 (Tenn.App.1978)—suit involving a creditor's furnisher's lien. *Cannon Mills, Inc. v. Spivey*, 208 Tenn. 419, 346 S.W.2d 266 (1961), represents the situation where a judgment creditor with a *nulla bona* return is given an automatic *lis pendens* under T.C.A. 26–604 (now 26–4–104) providing, as later amended, he files an abstract in the register's office. This case illustrates that there are actually two forms of *lis pendens* liens in Tennessee; one for a judgment creditor who seeks to execute against the particular property (T.C.A. 26–4–104); and one for a person who brings suit involving a particular piece of property (T.C.A. 20–3–101). The lien claimed in the case at bar fits neither category.

The foregoing clearly demonstrates that the doctrine of *lis pendens* was brought from England and into the common law of Tennessee for the purpose of protecting property in litigation from alienation and other interference. The Tennessee Legislature has acted through the above mentioned statutes to codify the scope of notice provided by a lien *lis pendens*.

**Statutory Law Concerning *Lis Pendens***

This creditor's position—that a lien *lis pendens* can attach to any property—reportedly stems from the repeal of T.C.A. 20–302. At first blush, the removal of the restrictions in that statute would tend to support this position; however, research of the repealing act clearly reveals that there has been no change in doctrine of *lis pendens*.

Since 1932, the general *lis pendens* statute required that before a *"lis pendens* proper" would become effective as notice to third parties, an abstract would have to be filed in the county registrar's office. (Code 1932 § 8053, T.C.A. 20–3–101)

This system was of course appropriate to lessen the problems with "constructive notice" discussed in the *French* case, *supra*. The notice system set up by Tennessee law regarding other real property liens remained as it was and did not conform to the new *lis pendens* system. For example, liens of judgment were automatically notice to the world until 1967. (Acts 1967, ch. 375 § 1)

In 1967, the notice-filing system previously set up for liens *lis pendens* was adopted for *all* liens on land. *See* T.C.A. 25–5–101, Acts 1967, Ch. 375.

Theoretically, at that point in the legislative process, there existed two statutes describing the same filing system: (1) T.C.A. 20–301, limited by T.C.A. 20–302 to *lis pendens* only, and (2) T.C.A. 25–501, purporting to cover *all* liens on land. It was thus necessary to repeal T.C.A. 20–302 as it contradicted the new statutory filing system for all land liens. *See American National Bank and Trust Co. v. Wilds*, 545 S.W.2d 749 (Tenn.App.1976), *cert. denied*, 1977, at 751.

Clearly the repeal of T.C.A. 20–302 was in no way directed at altering the common law availability of a lien *lis pendens*. If such was the case, Section 4 of Chapter 375, 1967 Public Acts would be subject to constitutional attack as it would encompass more than one subject. Tenn. Const. Art II § 17.

> The evil intended to be remedied by this constitutional provision, is to prevent laws upon one subject (*lis pendens* ) being tacked on to a bill upon a wholly different subject (filing system for all land liens), and in this way, sometimes elude the attention of the legislature, and pass without sufficient consideration.

*State v. Lasater*, 68 Tenn. 584, 9 Baxt. 584 (1877).

There is evidence in the recorded legislative debates that the Senate never considered this bill (Acts 1967, Chap. 375) to do more than implement a new filing-notice system. The remarks of the Senate sponsor, Senator Ayers, are illuminating:

> The purpose of this bill is to require that in the event that an individual receives a judgment or decree that it be recorded in the register of deeds office in the county in which the debtor's land is located. The purpose of this would be so that in

the event that anyone was attempting to buy a piece of property they'd only have to go to the register of deeds office instead of the various other offices in the county courthouse to find out if there are any liens against that property.

Senate debates on SB469, May 18, 1967, Third Reading.

Thus it is clear that the availability of liens *lis pendens* has in no way been altered from its common law form. Only the means of effectuating the lien, and all other land liens, has been addressed by the legislature.

Gibson's *Suits in Chancery* (5th ed., Crownover) Section 75 says the following about the rule of *lis pendens:*

§ 75. **Rule of Lis Pendens.**—During the pendency of a suit in Equity, neither party to the litigation can so alienate or encumber the property in dispute as to affect the rights of his opponent. This rule of *lis pendens* is based both on necessity and on notice: 1, It is based on *necessity*, because did it not exist, any litigation might be indefinitely prolonged in consequence of successive alienations of the property in dispute, making it necessary to be constantly bringing the successive alienees before the Court. 2, It is, also, based on *notice;* because the records of the Court are notices to the world; and in addition the statutes permit registration in other countries.

The *lis pendens* and the consequent notice begin from the service of a subpoena or other process after the filing of the bill, (for the Court must have acquired jurisdiction of the defendant before he can be bound), and continue through the entire pendency of the suit, and end only when the suit is really ended by final decree. In order, however, that a purchaser *pendente lite* may be thus affected, the suit must be prosecuted in good faith, with all reasonable diligence, and without unnecessary delay; it is applied *strictissimus juris.*

*Lis pendens is notice of everything averred in the pleadings pertinent to the issue or to the relief sought, and of the contents of exhibits filed and proved. In order that the notice may thus operate, the specific property to which the suit relates must be pointed out in the pleadings, in such a manner as to call the attention of all persons to the very thing, and thus warn them not to intermeddle.* It is not necessary that the land should be described by metes and bounds; certainty to a common intent, reasonable certainty, is sufficient. (Emphasis added)

In the recent case of *David Leonard Associates v. Airport–81 Nursing Care, Inc.,* 32 B.R. 960 (Bankr.Ct.E.D.Tenn., 1983) 2 Tennessee Bankruptcy Service 16–5, the Honorable Clive Bare in a similar proceeding found that T.C.A. § 20–301 is a procedural statute and does not create a lien *lis pendens* but sets forth the procedure for establishing a lien *lis pendens.* There must be some other authority equitable or otherwise providing the basis for the lien *lis pendens.* The plaintiff had filed a state court complaint against the debtor seeking recovery of the sum owed to the plaintiff for architectural services, and the plaintiff had concurrently filed a notice of lien *lis pendens* in the Register of Deeds' office which described a parcel of property. Judge Bare held that the "or otherwise" provision of T.C.A. § 20–3–101 did not give to the plaintiff a lien right where no other authority provided the basis for the lien.

The *lis pendens* asserted in this cause is not a proper lien to assert under the facts as stipulated. A lien *lis pendens* is only available to protect a claimant who is suing on a cause wherein the specific property secured by the *lis pendens* is a part of the corpus which constituted the subject matter of the suit. The lien *lis pendens* preserves the status quo and protects the interests of the litigants in the specific property which is subject to the lawsuit from further alienation until the court can render its decision. The lawsuit giving rise to this claim was for a breach of a sales contract involving a tract of real estate unrelated to the five-acre tract. A

lien *lis pendens* is not available to this creditor to defeat the interest of the creditors or the Trustee in Bankruptcy.