IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 6, 2010 Session

## JULIE-CRISTIE (BARONE) NEAL v. VERONICA MONDE BARONE, ET AL.

### Appeal from the Chancery Court for Cumberland County
No. 9302-4-05    Amy Hollars, Special Judge

_____

### No. E2009-02598-COA-R9-CV - FILED OCTOBER 13, 2010

_____

Julie-Cristie (Barone) Neal[1] ("Step-Daughter") brought an action to quiet title to a nearly three hundred acre farm in Cumberland County, Tennessee, against Veronica Monde Barone ("Ex-Wife") and Anthony F. Barone ("Father"). She primarily asserts that she has acquired adverse possession rights in the entire farm pursuant to Tenn. Code Ann. § 28-2-103. The disputed property was also the subject of prior litigation in a circuit court proceeding involving the enforcement of a foreign judgment and fraudulent conveyance claims against Father by Ex-Wife as a judgment creditor. In the present action Ex-Wife moved for summary judgment on several theories including the assertion that filing a lien lis pendens barred Step-Daughter's adverse possession claim. The trial court denied the motion for summary judgment on all grounds. Ex-Wife filed a motion asking the trial court for permission to submit an application for interlocutory appeal on one issue raised on summary judgment – whether the lien lis pendens tolled the seven-year adverse possession statute found in Tenn. Code Ann. § 28-2-103 during the circuit court proceeding. The trial court granted that motion and we likewise granted the application for interlocutory appeal on the asserted issue. We reverse the trial court's judgment on the sole issue presented to us.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court Reversed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J. and D. MICHAEL SWINEY, J., joined.

_____

[1]Plaintiff is the daughter of Father and sister of Brother, but is not the daughter of Ex-Wife.

C. Douglas Fields, Crossville, Tennessee, for the appellants, Veronica Monde Barone and Anthony F. Barone.

Jon E. Jones, Cookeville, Tennessee, for the appellee, Julie-Cristie (Barone) Neal.

**OPINION**

**I. BACKGROUND**

Ex-Wife became a judgment creditor of Father when a Canadian court in Ontario granted her a default judgment in January 1998 for $1,800,000. Thereafter she filed suit in the Circuit Court for Cumberland County to enforce the Canadian judgment (No. CV004002). Contemporaneously with the filing of the Circuit Court case, Ex-Wife also filed a lien lis pendens which was recorded in the Register's Office for Cumberland County on July 28, 1999.[2] In addition to domesticating or registering the Canadian judgment in Tennessee and subjecting it to this state's rules regarding enforcement of judgments, the Circuit Court case involved Ex-Wife's claims of a fraudulent conveyance by Father.

The litigation in both this case and the Circuit Court case involves a nearly three hundred-acre farm located in Cumberland County. Father originally purchased the farm in February 1974. In October 1977, he and another prior wife sold the farm to Father's mother, Mary Barone ("Grandmother"). In October 1990, Grandmother executed a quit claim deed of the farm, leaving blank the identity of the grantee. Less than three months after Ex-Wife obtained the default judgment against Father, the 1990 quit claim deed was filed bearing the name of Father's son – Frank Barone ("Brother") – on it as grantee. The Circuit Court found that the deed to the farm made in blank by Grandmother was a nullity since no grantee was

---

[2]An abstract of lien lis pendens ("suit pending") is a notice filed in the register's office in the county of suit to warn all persons that the title to the property is at issue in the litigation. The lien lis pendens recording procedure mandated by Tenn. Code Ann. § 20-3-101(a) (2009) is as follows: "When any person, in any court of record, by declaration, petition, bill or cross bill, seeks to fix a lien lis pendens on real estate, or any interest in real estate, situated in the county of suit, in furtherance of the setting aside of a fraudulent conveyance, of subjection of property under return of nulla bona, tracing a trust fund, enforcing an equitable vendor's lien, or otherwise, that person shall file for record in the register's office of the county an abstract, certified by the clerk, containing the names of the parties to such suit, a description of the real estate affected, its ownership and a brief statement of the nature and amount of the lien sought to be fixed."

named at the time of its delivery. The Circuit Court also found that Father's placement of Brother's name on the deed as grantee was done for the purpose of defrauding Ex-Wife. We upheld the Circuit Court's decision. *Barone v. Barone*, No. E2006-01394-COA-R3-CV (August 28, 2008).

Step-Daughter was not a party to the Circuit Court case. The undisputed facts of record in this matter reveal that she did attempt unsuccessfully to intervene at a late stage of the proceedings to assert the adverse possession claim. Based on the Circuit Court's judgment, Father holds the legal title to the farm. He was Grandmother's only heir and, since the quit claim deed was a nullity, the farm passed to Father upon Grandmother's death.[3] The Circuit Court case is on-going as to post-judgment issues. No execution issued and the issue of the possible expiration of the judgment lien is currently pending in that case.

In the current case, filed in April 2005, Step-Daughter claims she took possession of the farm in 1995 or 1996 while still in high school. Upon graduation, Step-Daughter then lived in New York from late 1996 to February 1998; she asserts that while she was in New York, her mother exercised possession and dominion over the farm on her behalf. In 2001, she moved onto the farm and has resided there continuously ever since. Step-Daughter notes as follows in her pleadings:

> The previous case [in the Circuit Court] established that [Father] holds legal title. *In this case, plaintiff does not claim that she holds legal title to the farm. She only asserts that she has a possessory right . . . .* Plainly and simply, the plaintiff is a trespasser and a "squatter" on the farm. Because she "squatted and trespassed" for more than seven years, she cannot now be ejected from the farm by her father or by a judgment creditor [i.e., Ex-Wife] claiming through her father.

(Emphasis added). Step-Daughter further asserts that Ex-Wife has known of Step-Daughter's adverse possession claim for more than seven years.

Interestingly, Step-Daughter admitted for summary judgment purposes that 1) she had a deed to the property dated in 1996 that she did not record until March 17, 2003, and 2) she was aware a lawsuit was filed regarding the property, sought advice from two attorneys, and purposely did not record her deed or take other action until the Circuit Court case was heard. While Step-Daughter claims that she has been holding the property adversely to everyone, she also has asserted that before the Circuit Court decision, she thought she and Brother were

---

[3]In July 2006, after Step-Daughter filed the present action, Father disclaimed any interest in Grandmother's estate (including the farm).

tenants in common and therefore she shared some of the income and expenses with him. Further, she claimed that she believed Brother was supposed to be holding the property in trust for her.

The initial pleading by Step-Daughter recognized the property involved was the subject of litigation and sought to prevent the sale of the farm by the Circuit Court, as Step-Daughter noted that Ex-Wife was likely to cause a judicial sale of the property. After the case had been pending for over three years, Ex-Wife filed a motion for summary judgment. Step-Daughter subsequently retained new counsel who responded to the motion for summary judgment, updated the answers to interrogatories, and amended the complaint. Ex-Wife thereafter amended the summary judgment motion to add two new theories including the issue regarding the lien lis pendens. The trial court denied the dispositive motion on all grounds on June 5, 2009. Ex-Wife thereafter moved for permission to make application for an interlocutory appeal on one issue raised in the summary judgment attempt, that being whether the lien lis pendens notice suspended the running of the seven-year time period for adverse possession found in Tenn. Code Ann. § 28-2-103 during the Circuit Court proceeding. After the trial court granted the request for an interlocutory appeal, we agreed to hear the issue.

## II. ISSUE

The issue on appeal is as follows:

Whether a registered lien lis pendens in support of a claim for fraudulent conveyance filed in circuit court by a creditor will toll the running of the statute of limitations found in Tenn. Code Ann. § 28-2-103 as that statute applies to the creditor, where the lawsuit and the lis pendens are filed during the seven-year period referenced in Tenn. Code Ann. § 28-2-103?

## III. STANDARD OF REVIEW

Tenn. R. Civ. P. 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993).

-4-

In *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008), the Tennessee Supreme Court clarified the moving party's burden of proof in a summary judgment motion. A moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Id.* at 5. According to the Court, when a party seeking summary judgment has made a properly supported motion, the burden shifts to the non-moving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *Id.; see Byrd*, 847 S.W.2d at 215; *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). The non-moving party may not simply rest upon the pleadings, but must offer proof by affidavits or other discovery materials (depositions, answers to interrogatories, and admissions on file) to show that there is a genuine issue for trial. If the non-moving party does not so respond, then summary judgment, if appropriate, shall be entered against the non-moving party. Tenn. R. Civ. P. 56.06.

There is no presumption of correctness for summary judgments on appeal. *See City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997). This court must view all of the evidence in the light most favorable to the non-movant and resolve all factual inferences in the non-movant's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox County Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). When the undisputed facts, however, support only one conclusion, then the moving party is entitled to judgment at a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## IV. DISCUSSION

The basis for Step-Daughter's asserted possessory rights to the farm is Tenn. Code Ann. § 28-2-103 (2000). The statute provides as follows:

**Seven-year period runs from time right accrued – Extent of Possession.–**
(a) No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements, or hereditaments, but within seven (7) years after the right of action accrued.

(b) No possession of lands, tenements or hereditaments shall be deemed to extend beyond the actual possession of an adverse holder until the muniment of title, if any, under which such adverse holder claims such lands, tenements or hereditaments is duly recorded in the county in which the lands are located.

This statute does not have any impact on actual title, but instead merely protects an adversely possessing trespasser with no color of title from ejectment provided the trespass has lasted for at least seven years. As noted in *Michael v. Jakes*, No. M1999-02257-COA-R3-CV, 2002 WL 1484448 (Tenn. Ct. App. M.S., July 12, 2002),

> [b]ecause the statute creates a possessory right, it gives the adverse holder the right to sue for trespass or for an injunction to prevent repossession. It creates a defensive right in the adverse possessor against anyone, including the title owner, seeking to dispossess the adverse possessor. . . .
>
> . . . Tenn. Code Ann. § 28-2-103 bars the right of the title owner to recover property that has been adversely held for more than seven years. The statute does not convey title, but may be used defensively by the adverse holder. . . .

*Id.* at 12-13 (internal citations omitted).

Ex-Wife's defense to the application of the adverse possession statute is that she had no standing in law to pursue an ejectment action or challenge anyone's possession in the Circuit Court action, since she was merely a judgment creditor asserting a fraudulent conveyance. That is, Ex-Wife contends she had no cause of action against anyone in possession until she proved her claim that the subject property was fraudulently conveyed to avoid enforcement of her judgment. She asserts that she could only rely on her lien lis pendens as an attachment mechanism to secure Father's property during the litigation process. According to Ex-Wife, her lien lis pendens prevented the accrual of Step-Daughter's adverse possession claim before Step-Daughter acquired any rights in law in the property. To the contrary, Step-Daughter contends that a lis pendens notice has no effect on an adverse possession claim. She asserts that the Tennessee lien lis pendens statute's effectiveness is limited to persons who thereafter derive their title claim from the holder of the title to the property described in the lien lis pendens, e.g., bona fide purchasers and encumbrancers.[4] Therefore, she suggests that the defensive right obtained by an adverse possessor under Tenn. Code Ann. § 28-2-103 does not depend on any transaction or relationship with the title holder.

This court has previously discussed the lien lis pendens doctrine in Tennessee:

---

[4]Tenn. Code Ann. §20-3-101(b) (2009) provides: "Until . . . [the lien lis pendens is properly recorded as required by (a) above], so far as concerns the rights of bona fide purchasers and encumbrancers, for value, of the realty, or any interest in the realty, they shall not be affected.

Liens lis pendens, in this jurisdiction, have remained substantially intact as they existed at common law, except that the legislature has modified the manner in which the liens are perfected. . . . [Quoting the Lord Chancellor in *Gaskell v. Durdin*, 2 Ball & Bet. 169,] "The rule of this court undoubtedly is, that any interest acquired in the *subject-matter* of a suit, pending the suit, is so far considered a nullity, that it cannot avail against the plaintiff's title." The Tennessee Supreme Court in *Shelton v. Johnson*, 36 Tenn. 672 (1857), followed the *Gaskell* rule, i.e., "The rule on this subject is, that any interest acquired in the *subject-matter* of a suit while it is pending will be regarded as a nullity as to the plaintiff's title, which may be established by a [judgment] or decree in the suit." . . . "Speaking of lis pendens . . . It is the subject matter of the suit, of which notice is given." Thus, it is clear, that at common law, a lien lis pendens applied only to the subject-matter of the suit. The primary purpose of which, . . . "is to prevent third parties from meddling with property in litigation."

*Boyd v. Green Farmers Coop.*, No. 142, 1990 WL 198249, at *2 (Tenn.Ct.App. E.S., Dec. 11, 1990). Additionally, the Tennessee Supreme Court explained in *Shelton v. Johnson,* 36 Tenn. 672 (1857) that

[t]his rule is founded more upon the necessity for it, to give effect to the proceedings of courts, than upon any presumption of notice. Without such a principle, all suits for specific property might be rendered abortive, by successive alienations of the property in suit; so that at the end of one suit another would have to be commenced; after that, another, by which it would be rendered almost impracticable for a man ever to make his rights available by a resort to the courts of justice. Whether this rule is founded on the idea of notice, or is a positive arbitrary rule, suggested and sanctioned by policy or necessity, there is certainly no principle more essential to the administration of justice than the doctrine of *lis pendens*. . . .

*Id.*, at 680. The Court further noted:

The principle of *lis pendens* is, as we have seen, to prevent any obstruction being thrown in the way of the execution of a judgment after it has been pronounced at the end of a litigation in the courts, by intervening rights acquired to the thing sued for. Rights so acquired will not be permitted to frustrate the objects of a suit in court, but will be passed over as if they had never existed. . . .

*Id.*, at 682.

In *In re Adams*, 57 B.R. 1 (Bankr. M.D. Tenn. 1984), the bankruptcy court noted as follows:

> the doctrine of *lis pendens* was brought from England and into the common law of Tennessee for the purpose of protecting property in litigation from alienation *and other interference*.

*Id.* at * 4 (emphasis added). The *Adams* court likewise provided:

> This rule of *lis pendens* is based both on necessity and on notice: 1, It is based on *necessity*, because did it not exist, any litigation might be indefinitely prolonged in consequence of successive alienations of the property in dispute, making it necessary to be constantly bringing the successive alienees before the Court. 2, It is, also, based on *notice*; because the records of the Court are notices to the world; and in addition the statutes permit registration in other countries.

> The *lis pendens* and the consequent notice begin from the service of a subpoena or other process after the filing of the bill, (for the Court must have acquired jurisdiction of the defendant before he can be bound), and continue through the entire pendency of the suit, and end only when the suit is really ended by final decree. . . .

57 B.R. at 5 (quoting *Gibson's Suits in Chancery* (5th ed.) § 75). The *Adams* court additionally noted:

> A lien *lis pendens* is only available to protect a claimant who is suing on a cause wherein the specific property secured by the *lis pendens* is a part of the corpus which constituted the subject matter of the suit. The lien *lis pendens* preserves the status quo and protects the interests of the litigants in the specific property which is subject to the lawsuit from further alienation until the court can render its decision. . . .

*Id.*

It is undisputed that Ex-Wife had a properly filed suit and recorded lien lis pendens on the property at issue, which notified Step-Daughter that the property was subject to the Circuit Court's jurisdiction. Furthermore, there is no question that the property in which

Step-Daughter is claiming an interest was the subject matter of the fraudulent conveyance suit and the corresponding lien lis pendens. Step-Daughter has not denied that any possessory interest she could claim would not have ripened until after Ex-Wife had commenced her fraudulent conveyance suit. Ex-Wife asserts the Circuit Court has retained jurisdiction over the property and that Step-Daughter's lawsuit is an attempt to meddle with the subject matter and authority of the Circuit Court.

There are two main components to Step-Daughter's attempt to avoid the above cited lien lis pendens principles: First, Step-Daughter asserts that under Tennessee law, as well as case law from a sister jurisdiction with a similar lien lis pendens statute, a lien lis pendens has no effect in regard to adverse possession. Step-Daughter also suggests that a strict reading of the Tennessee lien lis pendens statute indicates its inapplicability to adverse possessors, and that instead adverse possession defeats perfected deeds of trust and judgment creditors.

Step-Daughter has extracted a passage from *Southern Railway Co. v. Vann,* 216 S.W. 727 (Tenn. 1919) to support her position that an adverse possessor prevails over all other interests in disputed property unless made a party to all proceedings in which ownership interests are to be determined. The court in that case stated in dicta: "It is elementary that an adverse claimant to a right in land is not affected by the pendency of a suit about the same land unless he is a party thereto." *Id.* at 731. While the language appears on point, it must be considered in context, as the holding of the case concerned a railroad's easement rights, not adverse possessory rights. We decline to broadly apply such dicta to any context beyond the unique factual posture of the *Southern Railway* case. We further note that because her bare possessory interest without claim of title was not yet ripe at the time the Circuit Court case was initiated, Step-Daughter was not yet an "adverse claimant" who needed to be a party. As *Southern Railway* does not address the issue before us – whether adverse possession rights can ripen during the pendency of a law suit in which a lien lis pendens has been filed – we do not find it instructive.

Step-Daughter further relies upon two Nebraska cases that she contends support the non-applicability of the Tennessee lien lis pendens statute to adverse possession rights.

In *Merrill v. Wright*, 91 N.W. 697 (Neb. 1902), the Supreme Court of Nebraska observed that Nebraska law provided that "no interest can be acquired by third persons in the subject-matter thereof as against the plaintiff's title" after the filing of a lien lis pendens. While recognizing that the purpose of the statute was to prevent third persons from acquiring interests in property which would preclude the court from granting the relief sought in the complaint, the *Merrill* Court determined that an adverse possession title was an "independent title" and was not derived from the record holder of the title. As such, adverse possession

interest was not subject to a lien lis pendens. The *Merrill* Court held as follows:

> [T]he scope of the lis pendens rule must be confined to the interests and estates sought to be subjected [to the claims of the plaintiff filing the lis pendens notice], and cannot extend to independent and adverse titles. . . . While the language . . . "no interest can be acquired by third persons in the subject-matter thereof as against the plaintiff's title," is very broad, we are satisfied that it should be construed with reference to the pre-existing equity rule, which it evidently intended to adopt, and the obvious reason and principle behind it. To hold that no one could acquire rights by adverse possession . . . pending a protracted litigation by creditors' bill or suit to quiet title would be most unfortunate in its results.

*Id.* at 699. In *Coffin v. Old Line Life Ins. Co.*, 295 N.W. 884 (Neb. 1941), the Nebraska Supreme Court quoted 1 Freeman, *Judgments* (5th ed.) section 529:

> The rule of lis pendens has no application to independent titles not derived from any of the parties to the action or from any one in privity with them. . . .

*Id.* at 888. Step-Daughter also cites 3 Am. Jur. 2d *Adverse Possession* § 169, which provides as follows:

> Adverse possession may run against a judgment creditor of the title holder to land. Thus, where a judgment creditor sits by and fails to enforce a judgment while the actual possession of an adverse claimant ripens into title, the latter has the superior right . . .

Step-Daughter's contentions are well argued. However, in this case, Ex-Wife did not sit back and allow the adverse possession to ripen into a legal right to possession. She filed an action to contest the fraudulent conveyance by Father and filed a lien lis pendens. As a creditor asserting a fraudulent conveyance to defeat her claim, this was all she could do. Meanwhile, Step-Daughter, who claimed to have a deed to the farm property dated in 1996, sat on her purported claim until it appeared Ex-Wife had gained the upper hand in the litigation against Father.

In our view, the lien lis pendens "preserves the status quo and protects the interests of the litigants in the specific property which is subject to the lawsuit . . . until the court can render its decision. . . ." *In re Adams*, 57 B.R. at 5. As noted in *Adams*, a lien lis pendens in this state serves "the purpose of protecting property in litigation from alienation *and other*

*interference.*" *Id.* at 4 (emphasis added). Accordingly, we find that the running of the adverse possession statute was halted by the filing of the lien lis pendens.

We find that the language of Tenn. Code Ann. § 66-24-119 (2004) supports our conclusion:

> **Judgments and writs affecting real estate.**– Judgments, attachments, orders, injunctions, and other writs affecting title, use or possession of real estate, issued by any court *shall be effective against any person having, or later acquiring, an interest in such property who is not a party to the action wherein such judgment, attachment, order, injunction, or other writ is issued* only after an appropriate copy or abstract, or *a notice of lis pendens*, is recorded in the register's office of the county wherein the property is situated. . . .

(Emphasis added). Clearly the effect of this statute is not limited to bona fide purchasers or encumbrancers for value, but instead applies to "any person having . . . an interest" in the disputed property, including later acquired interests of non-parties to the original judgment.

All additional arguments raised by Step-Daughter are pretermitted as exceeding the limited scope of this interlocutory appeal.

## V. CONCLUSION

The judgment of the trial court is reversed on the sole issue of whether the valid lien lis pendens prevented the seven-year period referenced in Tenn. Code Ann. § 28-2-103 from running. Costs on appeal are taxed to the appellee, Julie-Cristie (Barone) Neal.

_____
JOHN W. McCLARTY, JUDGE